## JUNE TERM, 1863. 497

Vilas vs. The Milwaukee & Prairie du Chien Railway Co.

_____

## VILAS vs. THE MILWAUKEE & PRAIRIE DU CHIEN RAILWAY COMPANY.

The Milwaukee & Prairie du Chien Railway Company, organized under chap. 121, Laws of 1856, and chap. 308, Laws of 1860, by persons who had purchased, at mortgage sales, the road and other property of the Milwaukee & Mississippi Railroad Company, although by statute clothed with the same powers as the latter company, is not the same corporation, and is not liable for its debts.

APPEAL from the Circuit Court for *Dane* County.

In July, 1856, the Milwaukee & Mississippi Railroad Company became liable, upon contract, to pay the plaintiff ten shares of its full paid stock, in consideration of the plaintiff's having caused certain lands in Prairie du Chien in this state, of which he claimed to be the equitable owner, to be conveyed to said company by the persons who held the legal title to them. The stock was never paid to him, though demanded of said company in May, 1857. At the time it became due, and at the time of such demand, the value of said stock was $810. In January, 1861, by virtue of chapter 308, General Laws of 1860, certain persons who had before then purchased the road of the said Milwaukee & Miss. R. R. Co., filed, in the office of the secretary of state of this state, a certificate, signed by them, specifying, among other things, that they formed a cor-

poration by the name of the *Milwaukee & Prairie du Chien Railway Company*, and that as such they were authorized to purchase and hold the franchises of said Milwaukee & Miss. R. R. Co. ; and thereby said *Milwaukee & Prairie du Chien Railway Company* became, and have ever since been, a body politic and corporate by that name.    The complaint alleges that said company (which is the defendant in this action) subsequently acquired, by purchase or otherwise, and has ever since owned and exercised all the franchises of said Mil. & Miss. R. R. Co., and that it has been and is the same corporation, and liable to pay all demands existing against said last named company. Judgment is therefore demanded against the defendant for said sum of $810, with interest, &c.

The answer denied, among other things, the liability of the defendant to pay demands against the Milwaukee & Mississippi Railroad Company, and denied any liability to pay the plaintiff's demand.

On the trial, the plaintiff, against the objections of the defendant, introduced evidence tending to show the liability of the Milwaukee & Mississippi Railroad Company to him as averred in the complaint: and also the value of the stock therein mentioned.    The defendant moved for a nonsuit, on the ground that no cause of action against it had been shown.    Motion denied.    Defendant then introduced evidence showing, among other things, that it was organized and incorporated in accordance with the statute, by persons who had purchased the road, franchises and other property of said Milwaukee & Mississippi Railroad Company at mortgage sales thereof, under decrees in the United States court for the district of Wisconsin.    The court instructed the jury that if the plaintiff had proved the allegations of his complaint, he was entitled to recover the value of the stock therein mentioned.    Verdict for the plaintiff; motion for a new trial denied; and judgment upon the verdict ; from which the defendant appealed.

*Finches, Lynde & Miller*, for appellant.

*Wakeleys & Vilas*, for respondent :

A debt once due from a corporation remains so due from it, into whosesoever hands it may pass, or whosoever may become the corporators. No change of name, no contrivance or device by which any persons become the corporators and succeed to the rights and franchises conferred by the charter, can absolve the corporation from its debts. 2. We do not insist that the defendant, as the mere purchaser at mortgage sales of the real and personal property, the road-bed, superstructure, cars, right of way, depots, &c., of the M. & M. R. R. Co., assumed any liabilities of the corporation. All these things that company could sell, and remain a corporation still. But we do insist that, by legislation and their own voluntary acts, the present corporators have succeeded to the corporate franchises of the old company, including all its rights, powers, privileges, immunities, credits and liabilities; that they are exercising the identical powers conferred by the original charter and amendatory laws upon the original corporators and their successors; that they are the "successors;" that by the certificate filed with the secretary of state, they have, in effect, done no more than change the name of the company; that the M. & M. R. R. Co. has no longer any existence distinct and separate from that of the defendant. If the entire stock of that company had been sold to the persons who became the purchasers, and they, as stockholders, had organized, under the statutes, by the present name, it is manifest that they would not thereby have become stockholders in a new corporation. 3. Corporations may sell all such of their franchises as the legislature shall authorize them to sell. Redfield on Railways, 571 et seq.; id., 579 and note; Pierce on Am. Railroad Law, 512 and notes. Sec 1, chap. 121, Laws of 1856, after providing for the sale of railroads under mortgages, says: "Thereupon the party or parties acquiring title under any such sale, and their associates, successors and assigns, shall have and acquire thereby, and shall exercise and enjoy thereafter, *all and the same rights,*

privileges, grants, franchises, immunities and advantages * * which belonged to and were enjoyed by the company making such deed or mortgage, &c., and may conduct their business generally *under* and in the manner provided in *the char- of such railroad company,*" &c. Sec. 1, chap., 308, Laws of 1860, providing especially for the organization of the defend- ant, says: "And the said corporation shall possess all the privileges, powers, authorities, and capacities acquired by the said purchaser or purchasers, *or possessed* by the Milwaukee & Mississippi Railroad Company, *by virtue of the charter of said company*, and of any law of this state." Is it not plain that by these provisions everything which was granted and conferred by the original charter is transferred to the present company? If it be possible for the legislature to transfer the corporate powers as a whole—the corporation itself—from the original corporators to the present, in what more definite and appropriate language could it have been done? They do not grant to such persons as shall purchase, &c., new and original corporate powers *such as* or *similar to* those conferred on the the Milwaukee & Mississippi Railroad Company, but "*all and the same* rights," &c. The corporation "may conduct their business * * *under* * * *the charter*" of the old company; and, by the act of 1860, the defendant is to "pos- sess all the privileges, &c., *possessed by* the Milwaukee & Mis- sissippi Railroad Company * * *by virtue of*" its charter. Under these provisions is not the Milwaukee & Prairie du Chien Railway Company existing, operating and doing busi- ness *under* and by *virtue* of the original charter (and amend- ments) of the Milwaukee & Mississippi Railroad Co? Has it any other charter? Aside from the question of the mortgage lien, suppose that the legislature, with the consent of the orig- inal company, had provided in the above terms for transferring the corporation itself—the corporate rights as an entirety— to new corporators: nobody would doubt that this object was fully accomplished. Suppose the Milwaukee & Mississippi

Railroad Co. had owed no debts, but had built its road and had a large amount of debts due to it, and the legislature had authorized it to transfer all its corporate powers, &c., and provided that the purchasers should thenceforth hold the powers conferred on the original company, *and operate under its charter.* Is it not manifest that the grantees would take the corporation as an entire thing, with all its property, its credits and its liabilities? 4. So far as liability for the old debts is concerned, it is wholly immaterial whether the corporate existence passes into the hands of new corporators by purchase, by mortgage liens, or by transfer without consideration. The purchaser from the corporation may take and hold its property as a purchaser merely. If he stops there, he incurs no liability. If he takes only such things—such franchises as the corporation may sell and still remain a corporation—he is a mere purchaser. But if he chooses to take a transfer to himself of all the corporate rights—of the corporate existence—he is in the same position as if he were not a purchaser and had taken such a transfer. 5. If the M. &. M. R. R. Co. has not become the M. & P. du C. Co., what has become of it? It has not been dissolved in either of the ways known to the law. Ang. & A. on Corp., 799; 2 Kent., 305. Neither has it an existence distinct from that of the M. & P. du C. Co. It has no property, no officers, no chartered rights. Clearly it is the defendant which is operating under the charter of the M. & M. Co. 6. It often happens that two companies have become consolidated under an act of the legislature. It has never been supposed that either company thereby became absolved from its debts. *Union Canal Co. vs. Young* ; *Collins vs. Rock River Valley R. R. Co.,* 14 Wis., 492. Sec. 2, chap. 55, Laws of 1857, provides that the consolidated company "shall have all the powers, franchises and immunities which the respective companies shall have, by virtue of their respective charters, before such consolidation." Under this provision nobody doubts that it succeeds to the chartered rights and is a contin-

uation of the original company. Yet the language quoted is almost identical with that which confers on the defendant the rights of the M. & M. R. R. Co. No question can be raised as to the power of the legislature to transfer the corporate rights of the old company to the defendant. The latter having accepted the transfer, and organized under the law, is estopped from denying the power of the legislature to make the transfer. The original corporators, or their successors at the time of the transfer, could alone raise the question. But there can be no doubt that the legislature could so transfer the chartered rights with the consent of the old corporators, and the proof all indicates that they have acquiesced in the transfer.

*By the Court,* PAINE, J. It seems to us almost too plain for argument that this action cannot be sustained. The plaintiff was a creditor of the Milwaukee & Mississippi Railroad Company. The road and property of that company were sold on a mortgage, and the purchasers organized the company which is the defendant in this suit, in pursuance of the provisions of chapter 121, Laws of 1856. The question is, whether this company, organized under that law by the purchasers at the mortgage sale, is liable for all the debts of the old company whose property they purchased?

The counsel for the respondent concedes that it would be absurd to claim that a purchaser of property sold on a mortgage became liable to pay the general debts of the original owner. But he seizes upon the provisions of the law of 1856, giving to the new company all the rights and powers of the old, as a foundation upon which to base the claim that the whole effect of such a proceeding is merely to work a change in the name of the old corporation, and then to apply the familiar principle that a corporation remains liable for its debts through all its changes. The fallacy of this argument consists in the assumption that because the new corporation is clothed with the same powers as the old, therefore it is the same corporation.

Such a conclusion could only be arrived at by resolutely shutting the eyes to the entire scope and object of a railroad mortgage and a sale and purchase under it in pursuance of the law of 1856.

The object of that law was to enable railroad companies to borrow money, and to mortgage their property and franchises as security. To give full and perfect effect to such mortgages as securities was the leading idea of the law. To accomplish it, the company was authorized to mortgage its franchises, and, for the purpose of removing all doubt, it was further expressly provided that the purchasers at a mortgage sale might organize anew, and be invested with all the rights and powers of the old company in the management of the road and business. Without some such provision, a purchase of the property would be unavailing. The "same" powers are conferred, not with a view to a continuation of the same corporation, but to give full effect and protection to rights created by the mortgage, adverse to those of the old corporation. To say, therefore, that because the purchasers have the same powers they are in effect the same corporation, would be to defeat the primary object of the law, and to destroy the interests of the mortgagee. His interests, and all the proceedings to protect those interests, are adverse to the original corporation. And it is this adverse character which excludes the idea that the proceeding has no other effect than merely to continue the old corporation, and which so plainly distinguishes the case from those mere changes of corporate names or powers where the principle relied on by the plaintiff has been held applicable, that it is difficult to imagine that they could ever have been confounded.

The law shows plainly that it was intended that such mortgages should have effect, like other mortgages, according to their priority, and it certainly would have been idle to expect to obtain loans upon such securities if it had been otherwise. Yet the doctrine here contended for would destroy all priority,

and the purchaser under the prior mortgage would take the property and franchises of the company, with a liability to pay not only the subsequent mortgages but all its unsecured debts.

The judgment is reversed, with costs, and the cause remanded for a new trial.