# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT

## OF THE

# STATE OF WISCONSIN.

------•-•------

## SMITH VS. THE CHICAGO & NORTH-WESTERN RAILWAY COMPANY.

An agreement to procure a grant of lands to A is executed by procuring such grant to the person appointed by A to receive it.

The terms of an award and settlement between the Ch., St. P. & F. du L. R. R. Co. and the plaintiff were, that said company should issue to the plaintiff a certain amount of certificates of stock in case the legislature, at its then current session, should grant certain lands to said company. In an action for the alleged value of said stock, the complaint averred that at the time of the award a bill was pending in the legislature creating a new corporation, to be called the W. & S. R. R. Co., and granting *to it* the lands named in the award; that the Ch., St. P. & F. du L. Co. was then endeavoring to procure the passage of said bill, which was commonly known among the members as a bill granting said lands to said last named company; that it was the passage of said bill to which the arbitrators had reference in their award and the parties in their settlement; that there was at the time no bill pending to grant the lands directly to the Ch., St. P. & F. du L. Co.; that said company expected, in case the pending bill passed, to receive the benefit of the grant by consolidating with the W. & S. R. R. Co.; and that said bill became a law, and the corporation thereby created afterwards consolidated with the Ch., St. P. & F. du L. Co., which thus obtained the benefit of said grant in the manner requested and desired by it. It was further averred that said company neglected to issue stock to the plaintiff as agreed, to his damage, &c. *Held*, on demurrer, that the complaint showed a good cause of action against the Ch., St. P. & F. du L. Co.

Where the property and franchises of a railroad company have been sold under a mortgage, and a new company organized in pursuance of chapter 121, Laws of 1856, the new company is not liable for the debts of the old.

Chapter 108, Private Laws of 1859, also contemplates a mortgage sale of the road

VOL. XVIII—2

18    SUPREME COURT OF WISCONSIN,

Smith vs. The Chicago & North-Western Railway Co.

of the Ch., St. P. & F. du L. Co., and the organization by the purchasers of a new company, not bound for the old debts any further than might be provided by agreement.

There might be a valid agreement between a railroad company, the mortgagees in trust of its road and the bondholders, that after a sale under the mortgage the company should be so reorganized that the stockholders and unsecured creditors of the old company should become stockholders in the new; and such agreement would modify to that extent the effect of the mortgage sale.

Whether such agreement, to be valid, must be *in writing,* is not here determined.

General averments in a pleading are of no avail, when inconsistent with the facts specially averred in the same pleading.

Where one who has contracted with A to indemnify him and keep him harmless as to liabilities incurred by him as indorser for B, permits a judgment to be taken against him on such indorsement, it is not necessary that the judgment should have been collected to enable A to maintain an action for breach of the contract.

APPEAL from the Circuit Court for *Rock* County.

The facts alleged in the complaint will sufficiently appear from the opinion of the court. A demurrer to the complaint as not stating a cause of action against the defendant, was overruled, and the defendant appealed.

*Eldredge & Pease,* for appellant, argued, among other things, that the rights of the parties to the award and settlement mentioned in the complaint are to be determined by the express terms of such award and settlement. If we look upon it in the light of an award, and if it is explicit in its terms and unambiguous, and its true meaning apparent without a resort to extraneous matters, facts and circumstances, nothing *dehors* the award can be alleged and given in evidence against it, in determining the rights of the respective parties under it. In that respect an award is like a judgment. *Newland v. Douglass,* 2 Johns., 62; *Barlow v. Todd,* 3 id., 367; *De Long v. Stanton,* 9 id., 38; *Doke v. James,* 4 Coms., 567. Again, if we look at in the light of a contract of settlement, advised by mutual friends, parol evidence tending to vary or modify the contract by showing that the friends advising such settlement, and the parties to the contract, meant something different from what is apparent on its face, would be inadmissible. *Chetwood v Brittan,* 1 Green's Ch., 438; *Rogers v. Atkinson,* 1 Kelley,

12 ; *Lemaster v. Burckhart,* 2 Bibb, 28; 11 Johns., 201; 1 Johns. Ch., 273, 429 ; 1 Hopkins, 124; 1 Cow., 249; 5 id., 497; 4 Coms., 567 ; 2 id., 153 ; 1 Hill, 116 ; 1 Denio, 400 ; 17 Mass., 303 ; 19 Conn., 63; 7 Wis., 532; 4 id., 362; 12 id., 176 ; 9 id., 516; 13 id., 209. 2. The Chicago, St. Paul & Fond du Lac company agreed "to indemnify and keep harmless the said *Smith*" "as to liabilities incurred by him as surety, indorser or guarantor of the Rock River Valley Union R. R. Co." This is not a contract absolutely to pay the claims against the last named company as to which *Smith* was surety, indorser or guarantor. Neither is it a contract even to indemnify *Smith* and keep him harmless from liability on these claims. It appears from the complaint that all claims but one were, at the time of the award and settlement, in judgment. The word "liabilities" in the award and agreement is used as synonymous with *claims* and *demands.* No action can be maintained on the contract until actual damage, capable of estimate, has been sustained by the plaintiff; and the complaint does not show that the plaintiff has sustained any damage. It does not appear that the plaintiff has paid any of these claims, or given his own notes therefor, or otherwise acknowledged or secured them, nor that he even has any property on which said claims or judgments are liens. *Aberdeen v. Blackmar,* 6 Hill, 324 ; *Churchill v. Hunt,* 3 Denio, 321 ; *Crippen v. Thompson,* 6 Barb., 532 ; *Gilbert v. Wiman,* 1 Coms., 550 ; *Lathrop v. Atwood,* 21 Conn., 117, 123 ; Sedgwick on Damages, 311 et seq. ; 2 Parsons on Con., 462.

*A. Hyatt Smith,* in person.

*By the Court,* PAINE, J. This was a demurrer to a complaint, which was overruled, and the defendant appeals. The first question to be determined is, whether the complaint shows a good claim against the Chicago, St. Paul & Fond du Lac Railroad Company. It shows for the first cause of action, that the plaintiff had recovered a judgment of more than $120,000

against the Rock River Valley Union R. R. Company, to which the Chicago, St. Paul & Fond du Lac R. R. Co. was the successor; that the latter applied to have said judgment set aside and for leave to defend, which was granted; and that while the matter was so pending, the dispute was settled according to the decision of arbitrators to whom it had been submitted. The award required the company to pay to the plaintiff a certain amount of stock absolutely, which was paid. It also required the company to make out further certificates of full paid stock, to the amount of thirty-five thousand dollars, and deliver them to a third party, with directions to deliver them to the plaintiff upon the happening of a specified contingency. That was, the granting by the legislature to the company, at the session which was being held at the time the settlement was made, of the lands given by congress to the state to aid in the construction of a railroad from Fond du Lac northerly to the state line. The question is, whether the complaint sufficiently shows that such grant was made by the legislature? It is claimed that it does not, because it avers that the grant was made to the Wisconsin & Superior Railroad Company. But if the allegations in connection with this are considered, it must be held that the grant as made was a substantial compliance with the condition of the award and settlement. Those allegations are to the effect that at the time said settlement was made, a bill was pending before the legislature creating a new corporation to be called the Wisconsin & Superior Railroad Company, and providing for granting to it the lands in question; that the passage of this bill was advocated and desired by the Chicago, St. Paul & Fond du Lac Railroad Company; and that it was commonly known among the members as the bill granting said lands to said last named company; that it was the passage of said bill to which the arbitrators had reference in their award, and the parties in their settlement: that the Chicago, St. Paul & Fond du Lac Company expected, in case said bill passed, to receive the benefit of said grant, by consolidating with said Wiscon-

sin & Superior Company, which it avers was afterwards done. It is also averred that there was, at the time, no bill pending to grant the lands directly to the Chicago, St. Paul & Fond du Lac Company. Taking these allegations as true, and construing the award and settlement in the light of the circumstances surrounding the parties, any court must say that the intention was that the plaintiff should receive the additional thirty-five thousand dollars of stock, in case the legislature made such disposition of the grant as was desired by the railroad company. And a grant to any one whom that company should appoint, or to whom it should ask to have the grant made, would be a grant to it, within the meaning of such an agreement.

Suppose A has a disputed claim against B. They settle, B paying a certain sum down, and promising a further sum in case C grants him certain lands which he is then endeavoring to procure. Afterwards C grants the lands, not directly to B, but to some other person whom B should appoint. Would not that be a grant to him, within the meaning of the agreement? No one could doubt it; and the question under consideration is the same. It follows that as the Chicago, St. Paul & Fond du Lac Company became liable to deliver the stock in pursuance of the award, and failed to do so, the complaint shows a valid claim against that company.

It further remains to decide whether it shows enough to charge the present defendant with that debt? In the case of *Vilas v. The Milwaukee & Prairie du Chien Railway Co.*, 17 Wis., 497, we held that where the property and franchises of a railroad company had been sold on a mortgage, and a new company organized by the purchasers, in pursuance of chapter 121, Laws of 1856, the new company was not liable for the debts of the old. That decision would dispose of this case, except for the alleged agreement under which the mortgage sale, in this instance, was had. The complaint avers that there being an outstanding mortgage to trustees, to secure

the bondholders, an agreement was made "between the company and the holders of the bonds secured by said mortgage, and said trustees," that a sale should take place on the mortgage, "for the benefit of said company, its stockholders and creditors;" that "there should be a reorganization of said company under another name, and that the stockholders of said mortgagor company and unsecured creditors should become stockholders of said reorganized company," &c. It also avers that the sale did take place in pursuance of such agreement, and that the purchasers reorganized "said corporation under the name of the *Chicago & North-Western Railroad Company*," which is this defendant.

The theory of the plaintiff is, that these allegations show that the present company is nothing but the old company under another name, and is therefore liable for all the old debts. But we have come to the conclusion that although the complaint *says* the agreement was that the old company should be reorganized, and that it was reorganized, yet it *shows* that a new company was to be and was organized. It shows this by showing that there was to be a mortgage sale, which, in the absence of an agreement, would cut off all the rights of the old company and its creditors. The parties can only be assumed to have resorted to such a sale with a view to give full effect to it as a mortgage sale, except so far as such effect might be modified by the agreement itself. The agreement preserved to the old unsecured creditors the right only to come in as stockholders in the new company, a very different right from a cash demand against the old. It seems very obvious from this provision and from the whole character of the agreement, that it was not intended merely to change the name of the old company, but was intended to sell its property and franchises on the mortgage so as to cut off all rights of those interested in the old company, except so far as they might be preserved by the agreement itself. This conclusion is also supported by reference to the provisions of chapter

108, Pr. Laws of 1859, under which the complaint avers the reorganization was had. That act clearly contemplates a mortgage sale, and a new company organized by the purchasers not bound for the old debts any further than might have been provided by agreement. The general allegation in the complaint that the same company was reorganized, must be held to be neutralized by the special facts alleged, which show a new company in which those interested in the old might become interested in a certain way. And this being so, it follows that the plaintiff's only right would be to come in as a creditor of the old company and take stock in the new in pursuance of the agreement.

There can be no doubt that a valid agreement of that kind between the old company and its mortgagees would so far modify the effect which a mortgage sale would otherwise have. Whether, to sustain the allegation that such an agreement was made, it would be necessary to prove an agreement in writing, it is not necessary now to determine. But assuming a valid agreement to have been made as alleged, we think the complaint fails in the first count to show a cause of action, because it is nowhere alleged that the plaintiff has ever demanded or been refused the rights of a stockholder in the new company in pursuance of the agreement, or that the new company had ever assumed the debt as authorized by the act under which it organized.

Another cause of action is set forth, founded upon an agreement by the Chicago, St. Paul & Fond du Lac Company to indemnify and keep the plaintiff harmless as indorser for the Rock River Valley Union Railroad Company. It is averred that this was not done, but that divers judgments were recovered against the plaintiff as such indorser, which were in full force and unsatisfied, and liens and encumbrances on his land. We have no doubt this shows a good claim against the old company. The appellant's counsel contends that it does not, for the reason that there is no allegation that

the plaintiff had paid the judgments, or that anything had been collected on them. And he cites several cases which have held that on a mere agreement of indemnity against damage it is not sufficient for the plaintiff to show a judgment recovered against him, but he must show a payment. But those cases, and others referred to in them, recognize a distinction between an indemnity against damage on a liability, and an indemnity against the liability itself. The distinction seems rather shadowy, as a foundation for assuming any real difference of intention between the two agreements. But without determining whether or not it is well founded, it may be said that the agreement here shown is one of indemnity against liability. The agreement was to indemnify and keep harmless the plaintiff against all "liabilities" incurred by him as indorser, guarantor or surety of the Rock River Valley Union Railroad Company.

But although the second cause of action shows a good claim against the old company, it fails to show one against this efendant, for the reasons already given in respect to the first.

The demurrer should have been sustained.

The order is reversed, with costs, and the cause remanded.