THOMPSON and others vs. TAYLOR and others.

*Bond.— Construction.*

1. The bond in suit recited that one B. proposed to procure the release of a boat attached in certain suits in another state, by executing or procuring to be executed an obligation for that purpose, on condition that the obligors in the bond here in suit should "save and hold harmless" said B. or those executing said obligation "from loss or liability for or on account of any judgments" that might be obtained in said attachment suits. The bond further recites that any judgment that may be obtained in said actions, which B., or those whom he shall procure to execute the obligation required for obtaining the release of the boat, "shall be compelled to pay," shall be paid by the obligors in the present bond and by said B., each of said obligors and said B. paying equal portions thereof; and that said bond is given to secure to B. the full payment of the amounts which the obligors therein "may or shall become liable to pay to said B. or those whom he procures to sign the obligation aforesaid." The *condition* of the bond is, that the obligors shall pay B. or his assignees "their even, equal and exact portions of all judgments" that may be obtained in said attachment suits, which B. or those *signing* the obligation to procure the release of the boat "shall be liable for and compelled to pay," and shall "save and hold harmless" said B. etc., "from all loss or liability for or on account of any judgment over and above said B.'s equal, even and just proportion of the same." *Held*, that this was *not* an indemnity *against liability*, but against *damage on such liability;* and B., or his assignees of the bond cannot recover thereon without showing, not only that he executed the contemplated obligation in the attachment suits, and that judgments were rendered against the defendants in said suits, but also that B. has paid such judgments or suffered damage in consequence thereof.

2. The bond having been assigned to the attachment plaintiffs, who bring this suit upon it, the complaint would show good cause of action if it alleged that they accepted the assignment in discharge of the judgments in said attachment suits. The assignment would then be an actual payment of the judgment by B., and his assignees could recover from the obligors the whole amount of such payment, except B.'s equal share thereof.

APPEAL from the Circuit Court for *Racine* County.

Action to recover upon a bond by the assignees thereof.

Demurrer to the answer as not stating a defense or counter-claim. The bond, the construction of which was the sole point involved in the controversy, is sufficiently stated in the opinion.

*H. C. Baker and H. A. Wilson*, for appellants.

*J. E. Glover, J. S. White*, and *Fuller & Dyer*, for respondents. The following opinion was filed at the June Term, 1870:

COLE, J. We have no difficulty upon the point so fully discussed by counsel, as to whether the bond given by the defendants to Bartlett was only intended to indemnify him against any loss or liability which he might sustain upon such a bond as was required by the Illinois statute. The sole object of giving this bond of indemnity to him was to save him harmless from all loss or liability which he might sustain on account of any judgments obtained against the steamboat company, in the attachment suits, which he or those signing any bond or obligation for the release of the boat should be liable for and be compelled to pay. But this indemnifying bond did not alone contemplate the giving of the statutory bond, but any bond or other obligation "necessary and requisite to obtain a release of the boat." Manifestly, the thing which the defendants desired to accomplish was the release of the steamboat "Viola," which had been attached in the state of Illinois. And they doubtless well knew that the boat could not be released from the attachments except by giving the proper bond, under the Illinois statute, for that purpose, or by Bartlett or other parties giving the plaintiffs in those actions some satisfactory obligation to induce them to release the boat. So that upon the precise point argued here, namely, whether the language used in the indemnifying bond given by the defendants to Bartlett, only authorized him to execute the statutory bond, we fully agree with the counsel for the plaintiffs, that it did not so restrict him. Any bond, therefore, or other obligation, given by Bartlett, requisite and necessary to procure a release of the boat, would come within the language and intent of the bond sued on.

But we think no technical breach of the indemnifying bond is assigned in the complaint. The plaintiffs, we suppose, can have no greater rights upon the bond than Bartlett would have had if he had not assigned it to them. The condition of the bond is, in substance, that the obligors will well and truly pay or cause to be paid to Bartlett or assigns, their equal and exact portions of any and all judgments which might be obtained against the steamboat company in the attachment suits which Bartlett *shall be liable for and compelled to pay*, and shall save and hold Bartlett harmless from all *loss or liability for or on account of any such judgments.* Now it appears that Bartlett executed his bond to the plaintiffs in this suit (who were likewise the plaintiffs in the attachment suits in Illinois) conditioned, among other things, *to pay whatever judgments the court might render in the attachment suits*, or either of them, within ten days after the same should be rendered in case the same should be rendered against the steamboat company. And it is alleged in the complaint that upon Bartlett executing his bond to the plaintiffs, and upon his assigning to them the indemnifying bond given by the defendants as security for the performance of the conditions thereof, the plaintiffs agreed to release, and did release the steamboat Viola. Afterwards the plaintiffs obtained the judgments mentioned in the complaint against the steamboat company, which remained wholly unpaid by Bartlett or the defendant therein.

It is not very obvious to our minds what it is the plaintiffs rely upon as constituting a breach of the bond given by the defendants. Their right of action upon the bond we have assumed is not greater nor more complete than would be that of their assignor. Suppose Bartlett had brought the action alleging a failure of the defendants to perform the condition of their bond. The question would at once arise, what was the condition they agreed to perform? It was that the defendants would pay Bartlett or his assigns their equal and exact portions of any and all judgments which might be recov-

ered in the attachment suits against the steamboat company and
which he had become liable for and compelled to pay.   Now
there have been no judgments obtained against Bartlett upon
his bond ; nor does it appear that he has been compelled to pay
any judgments obtained against the steamboat company.   The
precise thing which the defendants undertook to perform was to
pay their portions of any judgments against the company which
Bartlett might become liable for and compelled to pay, and to
save him harmless from all loss or liability on account of any
such judgments.   What loss, what actual damage has Bartlett
sustained which he was to be indemnified against?   And if
there has been no breach of the bond so far as Bartlett is con-
cerned, do the plaintiffs stand in any better position?   Can they
maintain the action if he could not, and if so, upon what ground?
It seems to us that the doctrine of *Aberdeen v. Blackmar*, 6 Hill,
324 ; *Gilbert v. Wiman*, 1 Comst., 550 ; *Crippen v. Thompson*, 6
Barb., S. C., 532, applies to the case.   See also, *Turk v. Ridge*,
41 N. Y. R., 201.

We have felt it to be our duty to make these suggestions in
regard to the sufficiency of the complaint, although that point is
not made on the brief of counsel.   The demurrer was to the
answer, that it did not state facts constituting a defense or coun-
terclaim.   The demurrer searches back to the first defective
pleading.   And if the complaint is defective because no breach
of the indemnifying bond is properly assigned therein, as it
seems to us it is, then the demurrer should have been sustained
as a demurrer to the complaint.

*By the Court.*—The order of the circuit court is modified so as
to sustain the demurrer as a demurrer to the complaint.

DIXON, C. J. was absent.


Plaintiffs' counsel moved for a rehearing on the ground that
the court, in deciding upon the legal effect and construction of
the bond in question, did not discriminate between an indem-
nity against damage on a liability and an indemnity against the

liability itself, citing in support of the distinction, *Smith v. The Chicago and Northwestern R. R. Co.*, 18 Wis., 18; *Aberdeen v. Blackmar*, 6 Hill, 324; *Gilbert v. Wiman* et al, 1 Comst., 550; *Crippen v. Thomson*, 6 Barb., 534; *Turk v. Ridge*, 41 N. Y., 201; *Chace, Adm'r., v. Hinman*, 8 Wend., 452.

The motion for a rehearing was disposed of at the January term, 1870, as follows:

COLE, J.   It is claimed on the re-argument of this cause that the court in its former opinion failed to take the distinction between an understanding to indemnify against damage on a liability and an indemnity against the liability itself, and it is insisted that the bond given by the defendants to Bartlett was an undertaking of the latter character.   We think that the plain language of the bond itself repels any such construction.   In the reciting part of the bond we find that Bartlett proposed to procure the release of the boat by executing or procuring to be executed an obligation for that purpose " on condition that the above bounden parties shall save and hold harmless the said L. D. Bartlett, or those executing said bond or other obligation from loss or liability for or on account of any judgments that may be obtained in " the actions against the " Steamboat Navigation Company."   Again it is recited that it is understood and agreed by the parties to the instrument " that any judgment that may be obtained in said action which the said Bartlett or those whom he procures to execute the bond or other obligation necessary and requisite to obtain the release of the boat shall be compelled to pay, shall be paid by the above bounden parties and the said Bartlett, each of the said parties and the said Bartlett paying equal and even portions thereof, and this obligation is given to secure to the said Bartlett the full payment of the amounts which the above bounden parties may or shall become liable to pay to the said Bartlett or those whom he procures to sign the bond or other obligation aforesaid."   And by the condition the obligors were to pay Bartlett or his assigns " their

even, equal and exact portion of all judgments " that might be obtained against the Navigation Company in the attachment suits, which Bartlett or those signing the obligation to procure the release of the boat " *shall be liable for and compelled to pay shall save and hold harmless the said Bartlett and those signing said bond or other obligation from all loss or liability for or on account of any judgments over and above the said Bartlett's equal, even and just proportions of the same.*"

It seems to me impossible to say on these clauses of the instrument that the defendants agreed to indemnify Bartlett against all liability in procuring the release of the boat. On the contrary, it is perfectly apparent that it was the expectation of all parties that he would incur such a liability by signing a bond for the release of the boat, and that he might become liable to pay judgments obtained in the attachment suits against the Navigation Company. It was not then a covenant to indemnify against liability but a covenant to save him harmless against the consequences of that liability. This distinction is important and is recognized in the cases to which we are referred on the brief of counsel. Judge Gardiner in *Gilbert v. Wiman*, 1 N. Y., 550–562, alludes to this distinction, and distinguishes such cases as that of Rockfeller v. Donnerly, 8 Cowan, 623, and Chace v. Hineman, 8 Wend., 452, from the case before him. He says: " The distinction between the bond in question and those above mentioned consists, I apprehend, in this, that by the former a " charge " or "fixed legal liability " is declared to be the injury from which the obligee is to be saved harmless. By the condition of the latter, the obligor stipulates that the sheriff shall not sustain any damage or molestation by *reason* of any liability, etc. By the former he is to be saved from the thing specified. By the latter from its consequence, or in other words, from the damage or molestation which may result from the liability." This " distinction between an affirmative covenant for a specific thing, and one of indemnity against damage by reason

of the non-performance of the thing specified" may be rather shadowy as a foundation for assuming any real difference of intention between the two agreements, as remarked by Mr. Justice Paine in *Smith v. The Chi. and Northwestern R. R. Co.*, 18 Wis., 17–24; or may even be wholly without foundation at common law, as declared by Beardsley, J., in *Churchill v. Hunt*, 3 Denio, 321–327; (see also *Aberdeen v. Blackmar*, 6 Hill, 324, and *Jeffers v. Johnson*, 1 Zab., 73). Yet it may well exist without helping this case. For here it is manifest that Bartlett was to be saved from the consequences of the liability and not from the liability itself. The obligors agree to pay him "their even, equal and exact proportions" of all judgments that might be obtained against the company in the attachment suits which he should be *liable for and compelled to pay*, and save him harmless from loss or liability for, or on account of any judgments over and above his equal and just proportions of the same. In view of this plain language how can it be said that the injury from which the obligee was to be saved harmless, was a liability; that this was the thing against which he was to be indemnified? It was of course contemplated, that Bartlett, by giving his own bond and procuring a release of the boat, must necessarily incur a liability. And it was against the consequences of this liability that he wished to be protected, and was in fact indemnified. It was obviously contemplated also that judgments might be obtained against the company which he might be liable for and compelled to pay, and he was to be saved from all loss or damage on account of being obliged to pay such judgments. This is the plain reading of the bond, and it is difficult to make its meaning more clear and obvious by argument or comment. The bond, then, is an indemnity against damage on a liability as distinguishable from an indemnity on a liability. And it follows from this construction of the instrument that there is not a proper assignment of a breach of the bond. Bartlett has paid nothing and sustained no damage on account of the judgments against the company. And

as the plaintiffs are assignees their rights upon the bond are measured by his. If the complaint had shown that they accepted an assignment of this bond in discharge of the judgments against the steamboat company, then it doubtless would have been available to them. In that case, such an assignment would substantially be a payment of those judgments by the obligee Bartlett, and the liability of the defendants for the amount of those judgments — except the portion that Bartlett was bound to pay — would be clear and unquestionable. See upon this point, *White v. French*, 15 Gray, 339. And doubtless it is now competent for the plaintiffs to treat the assignment of the bond as a discharge of those judgments, and if they should conclude to do so and satisfy them of record, we cannot see any objection to their maintaining an action for the amount of those judgments — less the portions that Bartlett was bound to pay. It seems to us that they would be entitled to this remedy upon the bond when that is done. But as the case now stands the complaint is fatally defective.

*By the Court.*— The order of the circuit court is modified so as to sustain the demurrer as a demurrer to the complaint.

The Chief Justice took no part in the decision of this cause.