BARTH, Receiver, Appellant, vs. GRAF and others, Respondents.

*September 3 — November 1, 1898.*

*Attachment on implied contract: Waiver of tort: Banks and banking: Receivers: Trusts and trustees: Action by sureties: Contract to indemnify: Statute of frauds.*

1. Where an officer of a bank wrongfully withdraws money from it, the tort may be waived and an action be brought upon the implied promise to repay the same; and, under sec. 2731, R. S. 1878, an attachment will lie in aid of such an action.

2. The receiver of the bank, on recovering judgment in such an action, is in a position to attack a prior attachment of the same property.

3. The fact that a trustee of an estate, whose bond is conditioned to pay an annuity and to pay over the profits of the trust property and account therefor to the county court, has absconded after depositing the trust funds in a bank which he has wrecked, does not, in the absence of any legal proceeding to establish his default on the bond or any demand upon him, constitute a default which will render the sureties in such bond liable to an action by the estate.

4. Sureties in such a bond cannot maintain an action against their principal on his implied contract to indemnify them against loss or damage, until they have paid the obligation, and then only to recover the amount so paid with interest.

5. An express verbal agreement by the principal in a bond given as trustee, that he will indemnify and save harmless his sureties from and against any *liability* upon such bond or growing out of their signing the same, is valid as an original undertaking, and is not within the statute of frauds.

6. But to enable the sureties to maintain an action on such express agreement they must have incurred some liability other than that arising from their having signed the bond. The principal must have broken his promise to do or refrain from doing some particular act or thing or to save such sureties from some particular charge or liability. That he has placed the trust funds in a bank which he has wrecked, and has absconded, is not such a breach of the agreement as to give them a right of action thereon.

7. The mere fact that, subsequent to the commencement of an attachment against such principal by the receiver of the bank, the sureties have been compelled to pay and have paid a large amount by

Barth vs. Graf and others.

reason of having signed the bond does not make their prior attachment any better. It must stand on the facts existing when it issued.

3. An attachment being a statutory remedy, in derogation of the common law, the statute must be substantially pursued in order to give it validity.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

This is a contest for priority between attaching creditors of real estate. The plaintiff, claiming title under a sheriff's deed based upon a junior attachment, followed by a judgment, execution, and sale, brings this bill in equity to restrain the defendants from making sale of the real estate under an execution and judgment based upon a prior attachment, and to set aside the levy under that attachment and the lien of such judgment as a cloud upon the plaintiff's title.

The facts in regard to the respective claims are in effect as follows:

On July 11, 1893, Koetting was cashier of the South Side Savings Bank, and was at the time heavily indebted to the bank, and grossly insolvent. As trustee under the will of one Shepardson, he filed a bond in favor of the Shepardson estate for $164,000. The several defendants in this action, except *Isenring*, the sheriff, signed that bond as sureties of Koetting. Thereupon and about that date, Koetting received from that estate $38,275.62, and deposited the same in that bank. July 21, 1893, the bank suspended, and Koetting absconded. July 24, 1893, the plaintiff was appointed receiver of that bank. *July 26, 1893, the defendants in this* action, as such sureties, commenced an action against Koetting, and obtained an attachment upon an affidavit of the defendant *Peter Barth*, to the effect that Koetting was indebted to the plaintiffs therein in the sum of $56,272.52, as near as might be, over and above all legal setoffs, and that

the same was due upon an express contract, and that Koetting absconded with intent to avoid service of a summons and attachment on the real estate in question. The complaint therein was not made until August 18, 1893, nor filed until August 29, 1893, and alleged, in effect, such insolvency of Koetting, and that the same was known to himself, but unknown to such sureties, the appointing of Koetting as such trustee, the giving of such bond by Koetting as principal and by the plaintiffs therein as sureties, and contained the further allegation that, at the time of so signing the bond as sureties, Koetting "covenanted and agreed with the plaintiffs, and each of them, that, in consideration of the plaintiffs becoming such sureties on said bond, he (the said defendant) would indemnify and save harmless the said plaintiffs, and every of them, from and against any liability upon said bond or growing out of the signing thereof," and prayed judgment against Koetting for $40,000 and costs. August 21, 1893, Koetting entered his appearance in said cause, and waived service of any further process upon him, and consented to the entry of judgment therein in favor of the plaintiffs for the amount claimed in the complaint. Judgment was accordingly entered therein for that amount August 29, 1893.

On August 10, 1893, and after the attachment of the defendants, but before judgment therein, the plaintiff, *John Barth*, as such receiver, commenced an action against Koetting, and upon his affidavit to the effect that Koetting was indebted to him as such receiver in the sum of $109,482.54, with interest from July 1, 1893, over and above all legal setoffs, and that the same was "due upon implied contract," and that Koetting had absconded, obtained an attachment, and attached the real estate in question. The complaint therein alleged, in effect, the suspension and failure of the bank, the appointment of the plaintiff as such receiver and his acceptance and qualification as such, and that Koetting,

Barth vs. Graf and others.

as managing officer of the bank, and knowing all the facts, had since 1886, by himself, and by and through one Jacob Wuster, an irresponsible person, fraudulently drawn money from the bank to the amount of $109,225.46, and used and lost the same in speculating on the board of trade, and thereby caused the property and assets of the bank to be illegally and unlawfully converted to his own use, and thereby became and was indebted to the bank and to the plaintiff, as such receiver, in the sum mentioned,— and prayed judgment accordingly. November 3, 1893, judgment was entered therein for $111,449.74, for principal, interest, and costs. Execution was thereupon issued, and levied upon said real estate, based upon such attachment, and the same was sold to the plaintiff as such receiver on such execution, February 10, 1894. On May 28, 1895, a sheriff's deed of the premises was issued thereon to the plaintiff of all the title Koetting had in the premises August 10, 1893, and such sheriff's deed was recorded June 8, 1895.

On March 20, 1897, the plaintiff, as such receiver, commenced this action in equity to set aside and remove as a cloud upon his title the lien so claimed by the defendants by virtue of their attachment, judgment, and execution mentioned. The complaint herein alleged, in effect, the facts stated, and that, at the time of the rendition of the judgment against Koetting and in favor of the defendants as such sureties, Koetting was not indebted to them in any sum or any amount whatsoever, and that the affidavit of *Peter Barth* had no foundation except that the plaintiffs therein had signed such bond as such sureties of Koetting, on which they had not made any payment on behalf of Koetting; that they instituted the attachment for the purpose of acquiring a lien upon such real estate, and appropriating the same to themselves, in order to hinder and delay the creditors of Koetting in the collection of their debts; that such sureties were not then creditors of Koetting; that the obtaining of

such attachment, judgment, and execution was fraudulent, and void as to the plaintiff in this action. The defendants herein, except the sheriff, answered such complaint by way of admissions, denials, and counter allegations, among other things, to the effect that, at the time Koetting requested them to become sureties on his bond, he covenanted and agreed with them and each of them that, in consideration of their becoming such sureties upon his bond and incurring such liability for and on his behalf, he would indemnify and save harmless every one of them from and against any liability upon said bond as such sureties or growing out of their signing the same; that Koetting committed a breach of his covenant with such sureties by depositing the trust moneys in the bank, and thus knowingly squandering and losing them, and thereby rendering such sureties liable to the beneficiaries of said trust; that, after the entry of said judgment, the defendants, as such sureties, actually paid the sum of about $36,000 as a partial payment to such estate on account of such loss, and that a judgment had been recovered against them in favor of the estate for $63,975.96.

The cause having been tried, the court filed its findings of fact and conclusions of law, wherein the facts stated were in effect found, and it was also found in effect that, prior to the commencement of said action by said sureties against Koetting, no proceedings had been instituted in the county court to establish the default of Koetting as such testamentary trustee, or the liability of the sureties for such default, and no citation or order of any kind had been issued by or from the county court calling upon or citing him to account to the court or otherwise as such trustee, and no demand of any kind whatever had been made upon Koetting, as such trustee, to account; that no order or permission was ever obtained from the county court by the sureties authorizing or permitting them to institute said suit or any suit whatever against Koetting; that July 26, 1893,

the default of Koetting had not been in any wise established or adjudicated, and that his liability and that of his sureties was still undetermined and contingent so far as the proceedings in the county court were concerned, but that his default had in fact occurred, and was well known to him and his sureties; that subsequently to the entry of said judgment, August 29, 1893, the sureties were compelled to pay, by reason of their liability upon said bond for the defalcations of Koetting, to his successor, and did actually pay, an amount much in excess of the entire amount of said judgment with interest from the date of its entry; that such judgment against Koetting has not been paid to the sureties, nor has any part thereof, and that each of the sureties, except one, paid separately towards such payment the sum of about $13,000; that the sureties instituted their action, and caused the writ of attachment to be issued therein, and the complaint to be filed, and the judgment to be entered, and all proceedings to be had therein without any fraud, and without any intent on their part, or on the part of any of them, to hinder, delay, or defraud any other creditor of Koetting, and in entire good faith, and in order to secure themselves against loss on their liability on such bond, and in good faith indemnify themselves out of the property of Koetting against their liability upon the bond.

And, as conclusions of law, the court found, in effect, that the plaintiff's lien by virtue of his attachment was subordinate and subject to the lien of the defendants by virtue of their attachment; that whether the defendants or any of them were indemnified severally against liability upon the bond otherwise than by operation of law was immaterial to the decision of this case, and was not decided; that as to whether there was an agreement to indemnify the defendants jointly, as distinguished from a several indemnity, there was no evidence of such joint indemnity; that the defendants were entitled to judgment dismissing the plaintiff's com-

plaint, with costs, but to be payable out of any funds in his hands as such receiver.

From the judgment entered thereon accordingly the plaintiff brings this appeal.

For the appellant there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *Charles F. Fawcett* and *F. C. Winkler.*

For the respondents there was a brief by *Julius E. Roehr* and *Timlin & Glicksman,* and oral argument by *Nathan Glicksman, Julius E. Roehr,* and *George P. Miller.* They argued, *inter alia,* that the plaintiff's attachment is void because the complaint is in tort, and the allegation of an implied promise does not make it one on contract. *Kewaunee Co. v. Decker,* 30 Wis. 624, 633; *Allen v. Allen,* 52 Hun, 398; *Barnes v. Quigley,* 59 N. Y. 265; *Ross v. Mather,* 51 id. 108; *Pierce v. Carey,* 37 Wis. 232; *Scheunert v. Kaehler,* 23 id. 523; *Moore v. Noble,* 53 Barb. 425; *Lane v. Cameron,* 38 Wis. 603. Upon the facts stated no implied assumpsit can arise. *Cooper v. Cooper,* 147 Mass. 370. In case the tort can be waived, a recovery can be had only for the amount of the plaintiff's property by which the defendant was himself unjustly enriched. In an action against several tort feasors on an implied assumpsit, a recovery cannot be had against one of them merely because he aided toward the conversion or loss of the plaintiff's property. Keener, Quasi-Cont. 159, 163; *Nat. Trust Co. v. Gleason,* 77 N. Y. 400; *Fanson v. Linsley,* 20 Kan. 235, 239; *Tightmeyer v. Mongold,* 20 Kan. 90; *Patterson v. Prior,* 18 Ind. 440; *Limited I. Asso. v. Glendale I. Asso.* 99 Wis. 54. The plaintiff, as a subsequent attaching creditor, cannot take advantage of any defect or irregularity the effect of which the judgment debtor himself might waive, such as that the attachment is upon a demand not yet due. *Shakman v. Schwartz,* 89 Wis. 72, 77; *Standard I. Co. v. Lansing W. Works,* 58 Kan. 125. The judgment in the defendants' attachment is conclusive against the plaintiff unless

he can show fraud or collusion. *Bank of Fayetteville v. Spurling,* 7 Jones' Law (N. C.), 398; *Rudolph v. McDonald,* 6 Neb. 163. The principal could create a lien upon his property, or permit one to be acquired by his sureties, by legal process. *Gladwin v. Garrison,* 13 Cal. 330; *Haseltine v. Guild,* 11 N. H. 390; *Hapgood v. Wellington,* 136 Mass. 217; *Merchants' & M. Nat. Bank v. Cumings,* 149 N. Y. 360. The defendants had a right of action on the express covenant of their principal against liability, and that right of action was complete for the full amount of their liability. *Gilbert v. Wiman,* 1 N. Y. 550; *Belloni v. Freeborn,* 63 id. 384; *Kohler v. Matlage,* 72 id. 259, 266; *Dorrington v. Minnick,* 15 Neb. 397; *Wilson v. Stilwell,* 9 Ohio St. 470; *Hall v. Nash,* 10 Mich. 303; *Hodgson v. Bell,* 7 Term, 97; *Holmes v. Rhodes,* 1 Bos. & P. 638. The agreement was broken by the principal's failure to invest the trust funds in safe securities. *Simmons v. Oliver,* 74 Wis. 633; *In re Scudder's Estate,* 47 N. Y. Supp. 101. The amount of the sureties' liability was the amount of the trust property wrongfully lost. They may waive, and in this case have waived, the determination of that amount by the county court. *Meyer v. Barth,* 97 Wis. 352; *Shepard v. Pebbles,* 38 id. 373. A proceeding against the principal in the county court, preliminary to an action against the sureties, is not essential. Sec. 4014, R. S. 1878; *Comm. v. Wenrick,* 8 Watts, 159; *Johannes v. Youngs,* 48 Wis. 101; *Golder v. Littlejohn,* 23 id. 251; *S. C.* 30 id. 344.

CASSODAY, C. J. 1. As indicated, the defendants claim a lien upon the land in question under and by virtue of an attachment levied thereon July 26, 1893; and the plaintiff claims title to the same land under and by virtue of an attachment levied thereon August 10, 1893, and the subsequent judgment, execution, sale, and sheriff's deed of the same. The defendants contend, however, that the plaintiff's attachment was issued in an action sounding in tort, without the statutory ground for the same being alleged. Although, as

indicated, it is alleged, in effect, that Koetting fraudulently drew the money from the bank, yet it is further alleged, in effect, that he thereby "became, and now is, indebted" to the bank, and hence to the plaintiff, in the amount stated, with interest from July 1, 1893, and judgment is prayed for that amount. In other words, the manifest purpose of that complaint was and is to waive the tortious taking, and sue for the exact amount of the money taken, as due upon an implied contract,— the same as stated in the affidavit for the attachment. If it was competent for the plaintiff thus to waive the tort and sue upon such implied contract, then the record shows that the plaintiff made a case for an attachment, as prescribed by the statute. R. S. 1878, sec. 2731. This court has repeatedly held that, where money or property has been wrongfully converted, the owner may waive the tort and recover the amount of the money or the value of the property so converted upon an implied contract. *Norden v. Jones,* 33 Wis. 600; *Smith v. Schulenberg,* 34 Wis. 41; *Walker v. Duncan,* 68 Wis. 624; *Lee v. Campbell,* 77 Wis. 340; *Van Oss v. Synon,* 85 Wis. 661. So, it has been expressly held by this court that, where money has been obtained by false representations, the party defrauded may waive the tort and recover upon an implied contract to repay the money so obtained, and may properly have an attachment in such action to enforce such repayment. *Western Ass. Co. v. Towle,* 65 Wis. 247, 254. That case has been expressly approved in other states. *Hart v. Barnes,* 24 Neb. 782; *Farmers' Nat. Bank v. Fonda,* 65 Mich. 533. In this last case, it was held, under a statute like ours, that "a suit in attachment lies upon the implied assumpsit arising out of the embezzlement by a clerk of the money of his employer, such a case falling within the language of the attachment act." We must hold that the plaintiff obtained a valid lien upon the land in question by virtue of his attachment, August 10, 1893.

2. This being so, it is very obvious that the plaintiff is in a position to contest the validity of the prior attachment procured by the defendants. This is virtually conceded by their counsel, and has been repeatedly held by this court. *Elliott v. Jackson*, 3 Wis. 649; *Hawes v. Clement*, 64 Wis. 152; *James v. Davidson*, 81 Wis. 324. In the first of these cases, it was, in effect, held that although the affidavit may be in the words of the statute, and so authorize the issuing of the writ, yet whenever it appeared, either by the declaration or proof, that the real cause of action was not " an indebtedness due upon a contract, express or implied," the suit would be dismissed.

3. Of course, when the defendants signed Koetting's bond as sureties, July 11, 1893, and the same was filed, they thereby at once became bound to the estate, according to the precise terms of the bond, as absolutely and irrevocably as Koetting himself. That bond, in effect, required Koetting, as such trustee, to pay to the widow a certain annuity out of the rents, issues, and profits of the real and personal estate, for the period of ten years, and thereafter to pay the net income of the estate to two certain other persons named, during their natural lives, respectively; and, upon the death of each, one half of the estate was to be assigned, transferred, and delivered by Koetting, as such trustee, to the several persons therein named; and, in case of the death of one, then her share was to go to her heirs. The bond contains these conditions, in effect: That if Koetting, as such trustee, should make and return to the county court, within such time as the court should direct, a true inventory of all the goods, chattels, rights, credits, and estate so devised or bequeathed, and annually render an account to such court of the trust in his hands, of the management, disposition, and annual income thereof, faithfully execute such trust under the direction of the court, according to the true intent and meaning thereof, adjust and settle his accounts with such court at the expira-

tion of his trust, and pay and deliver to the persons entitled thereto all balances, money, and property in his possession, and for which he was liable, as such trustee, then such obligation was to be void; otherwise, to remain in full force and virtue.

The questions recur whether, on the day when the defendants so attached, to wit, fifteen days after the execution of the bond, the estate had a right of action against Koetting and the defendants, as his sureties, on that bond, for a breach thereof, merely because in the meantime Koetting had deposited in the bank of which he was cashier $38,275.62, and the bank had suspended and Koetting had absconded. We are clearly of the opinion that these things did not constitute a breach of the bond, so as to authorize an action thereon against Koetting and his sureties. Thus, it is said by a learned author on the subject that, "although there is a conflict among the cases, the weight of authority seems to be that, in the absence of a statute on the subject, the sureties on the official bond of an executor or administrator are not liable to suit thereon until a judgment has been recovered against the executor or administrator in his official capacity, and also another judgment against him personally establishing a *devastavit*. The reason given for these decisions is that the liability of such sureties is contingent, and not direct; and it would be unjust to allow them to be called upon until it is established that their principal has been guilty of wrongdoing in his office." 2 Brandt, Suretyship & G. (2d ed.), § 578, and authorities there cited. As there indicated, the rule is, necessarily, less stringent where the executor or trustee has died, or has absconded and remained outside of the jurisdiction of the court. Id. § 579. And yet in all such cases, it would seem, the breach of the bond must be fixed by the judgment, decree, or finding of the court having jurisdiction, before an action will lie against the sureties on the bond. *Comm. v. Wenrick*, 8 Watts, 159; *Boyd v. Comm.* 36

Pa. St. 355; *Comm. v. Raser*, 62 Pa. St. 436; *Comm. v. Mc-Donald*, 170 Pa. St. 221. The first of these cases, perhaps, goes as far toward sustaining such action as any case that can be found; and yet there the executor, after having received the assets of the estate, absconded, and took up his residence in another state, and, while there, was cited by the court in which he had filed his bond to appear and settle his account, but he failed to do so, and died insolvent; and such facts appear to have been judicially determined. In the case at bar the county court took no action whatever, and no proceeding had been instituted therein to establish default on the part of Koetting, and no demand had been made upon him, and no authority or permission had been obtained by the sureties from that court to commence the action against Koetting prior to the commencement of the same. We must hold that there was no default in the bond which would have authorized an action thereon in favor of the estate and against the sureties at the time the defendants levied their attachment.

4. True, the action of the defendants was not in favor of the estate, nor upon the bond, but was brought by the sureties against their principal, by reason of having signed Koetting's bond as such sureties. Upon signing the bond as such sureties, in the absence of any express agreement, the law would have implied a promise on the part of Koetting to indemnify and save them harmless from any loss or damage by reason of having signed the bond. But it is well settled that no action could have been maintained by the sureties upon such implied promise, even had Koetting been adjudged in default, without first making payment; and then only to recover back the amount so paid, with interest. This is well settled. 1 Brandt, Suretyship & G. (2d ed.), § 205; 3 Parsons, Cont. (8th ed.), *186, *187; *Pigou v. French*, 1 Wash. C. C. 278; *Lane v. Westmoreland*, 79 Ala. 372; *Stone v. Hammell*, 83 Cal. 547; *Romine v. Romine*, 59 Ind. 346; *Stearns v.*

*Irwin,* 62 Ind. 558; *Covey v. Neff,* 63 Ind. 392; *Hearne v. Keath,* 63 Mo. 84; *Huse v. Ames,* 104 Mo. 91; *Ellis v. Harrison,* 104 Mo. 270; *Kimmel v. Lowe,* 28 Minn. 265. Courts go so far as to hold, in such a case, that "after the death of the principal, a judgment obtained against the sureties cannot be enforced by them as a claim against his estate *until they have paid it.*" *In re Hill's Estate,* 67 Cal. 238. So, it has been held that in an action upon a promissory note given by a principal to his surety to indemnify the latter for his liability, the measure of damages is the amount paid by the surety on account of such liability before the trial, with interest from the time of payment. *Child v. Eureka Powder Works,* 44 N. H. 354.

5. But it is contended that such implied promise on the part of Koetting to his sureties was enlarged at the time he requested them to become sureties, and in consideration of their signing the bond as such sureties, to the effect that he would indemnify and save them and every of them harmless "from and against any liability upon said bond or growing out of their signing thereof." We have no doubt that such an agreement, if made, though not in writing, was binding upon the parties. It did not contradict the bond, and was an original undertaking,— not within the statute of frauds. *Barry v. Ransom,* 12 N. Y. 462; *Tighe v. Morrison,* 116 N. Y. 263. The question recurs whether there was any breach of such oral agreement whereby the sureties were authorized to maintain an action thereon against Koetting, and attach his property, July 26, 1893. Liability on the bond thus mentioned in such oral agreement manifestly meant something more than the liability incurred by signing the bond; otherwise, the right of action of the sureties thereon against Koetting would have accrued immediately upon filing the bond. In other words, the oral promise was to indemnify and save the sureties harmless from subsequent liability to the immediate right of action against them

in favor of the estate on the bond by reason of Koetting's failure to perform the conditions of the bond, or some of them. As indicated, Koetting had made no such default .when the attachment in favor of the defendants was levied, July 26, 1893. Although there are some expressions in the books which may tend to a different conclusion, yet the prevailing opinion is to the effect that sureties cannot, upon such an agreement, maintain an action against their principal, without first making payment, except where the principal has broken his promise to do or refrain from doing some particular act or thing, or to save the sureties from some particular charge or liability. Thus, where the maker of a note agreed with his surety to pay the amount of the note to the payee on a given day, but made default, it was held that the surety could recover of his principal without first making payment. *Loosemore v. Radford,* 9 Mees. & W. 657. So, where A. and B. dissolved partnership with debts outstanding, and the new firm agreed with B., upon his withdrawal, to pay all debts of the old firm and save B. "harmless from any cost, trouble, or liability on account of the same," upon the default of the new firm it was held that B. could recover against them without first paying such debts. *Lathrop v. Atwood,* 21 Conn. 117. The case of *Kohler v. Matlage,* 72 N. Y. 259, is quite similar in its facts, and the same rule was sanctioned; but on page 266, CHURCH, C. J., speaking for the whole court, said: "It is settled that upon an obligation to do a particular thing, or to pay a debt for which the covenantee is liable, or to indemnify against liability, the right of action is complete on the defendant's failure to do the particular thing he agreed to perform, or to pay the debt, or discharge the liability." To the same effect: *Belloni v. Freeborn,* 63 N. Y. 383; *National Bank v. Bigler,* 83 N. Y. 51; *Merchants' & M. Nat. Bank v. Cumings,* 149 N. Y. 360. In *Gilbert v. Wiman,* 1 N. Y. 550, the sheriff brought suit on a bond given to him by his deputy and his

sureties, whereby they agreed that the sheriff should not
sustain any damage or molestation whatever by reason of
any act or liability incurred by and through the deputy;
and, although judgments were recovered against the sheriff
by reason of the acts of the deputy to the amount of $2,948.41,
yet it was held that, as the sheriff had not paid any part of
the judgment, he could not recover anything.    In that case
it was held that, "in contracts of indemnity, where the ob-
ligation is to perform some specific thing, or to save the
obligee from a charge or liability, it seems the contract is
broken when there is a failure to do the specific act, or when
such charge or liability is incurred."    So, it has been held
that a covenant for indemnity against the recovery of a
judgment is broken when the judgment is recovered.    *Con-
ner v. Reeves,* 103 N. Y. 527.  The rules mentioned have been
recognized and followed by this court.    *Smith v. C. & N. W.
R. Co.* 18 Wis. 21; *Thompson v. Taylor,* 30 Wis. 68; *Selleck
v. Griswold,* 57 Wis. 291.    The cases cited sufficiently indi-
cate the distinction between the two classes of cases; and
they moreover show that the oral agreement of Koetting
to save the defendants harmless from liability, even if made
as claimed, was not broken when their attachment was levied,
July 26, 1893.    The mere fact that, subsequently to the plaint-
iff's attachment, the defendants were compelled to pay, and
did pay, a large amount by reason of having signed the bond
as such sureties, did not make their attachment any better.
"An attachment must stand or fall according to the state
of facts existing at the date of its issuing, and cannot be cured
by a subsequent event."    *Todd v. Shouse,* 14 La. Ann. 426;
*Dennison v. Soper,* 33 Iowa, 183.

6. The statute authorizing an attachment is in derogation
of the common law, and must be substantially pursued in
order to give validity to the attachment.  *Whitney v. Bru-
nette,* 15 Wis. 67; *Steen v. Norton,* 45 Wis. 412; *Wiley v. C.
Aultman & Co.* 53 Wis. 560; *Goodyear Rubber Co. v. Knapp,*

Kuhl vs. The Chicago & Northwestern R. Co.

61 Wis. 103; *Streissguth v. Reigelman*, 75 Wis. 214; 3 Am. & Eng. Ency. of Law (2d ed.), 184.

For the reasons given, and upon the undisputed facts appearing of record, we must hold that, at the time the defendants levied their attachment, Koetting was not indebted to them in any sum "due upon contract, express or implied," within the meaning of the statute; and hence they had no right of action against him,— much less any ground for an attachment. R. S. 1878, sec. 2731; *Hawes v. Clement*, 64 Wis. 152.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment in favor of the plaintiff according to the prayer of his complaint, and for further proceedings according to law.