National Foundry & Pipe Works vs. Oconto City Water Supply Co.

105      48
a183 US  216
a46 Led  157
a22 SC   111

NATIONAL FOUNDRY & PIPE WORKS, LIMITED, Appellant, vs. OCONTO CITY WATER SUPPLY COMPANY, Respondent.

*November 9 — December 15, 1899.*

*Corporations: Reorganization: Mortgages: Mechanics' liens: Foreclosure: Federal courts: Jurisdiction: Statutes: Pleading.*

Andrews & Whitcomb, mortgagees of the waterworks plant and franchises of the Oconto Water Company, used by it to supply water for public and private purposes in, and under contract with, the city of Oconto, foreclosed their mortgages by suit in which such proceedings were had that, in due form of law, they became the owners of all such property, the plaintiff not being a party to such suit. When such action was commenced plaintiff claimed a lien on the waterworks property for pipe furnished and used in the construction thereof by the Oconto Water Company, while the mortgagees were the owners of the stock of such company. Plaintiff foreclosed its lien claim in the federal court without making the

mortgagees parties to the action. Thereafter, in an action in the federal court commenced by plaintiff against Andrews & Whitcomb and others to determine the status of the lien judgment as regards the title under the mortgages, it was decided that waterworks property, circumstanced as the property in controversy, is not subject to materialmen's or mechanics' liens under ch. 143, R. S. 1878; that Andrews & Whitcomb, not being parties to the lien suit, were not affected by the judgment rendered therein, and in effect that they owned the property in controversy under the mortgage foreclosure sale free from any claim under such lien judgment. Thereafter, plaintiff enforced the lien judgment, a sale being made by the United States marshal and deed executed and delivered by him pursuant to such sale, in form conveying the property to plaintiff. After Andrews & Whitcomb obtained title under the mortgages, they organized the defendant corporation for the purpose of having such corporation acquire title to the property in controversy, with the incidental right to exercise the powers, privileges, and franchises formerly possessed by the Oconto Water Company, pursuant to sec. 1788, Stats. 1898, which purpose was carried out. After the conveyance under the lien decree, plaintiff commenced this action to obtain possession of the property, claiming that defendant, as a successor corporation, under sec. 1788, Stats. 1898, assumed the liabilities of its predecessor, and that, in taking the benefit of the property, it became at least equitably bound to discharge the burdens upon it. *Held:*

(1) The principle, that when one corporation goes out of existence by merger with or annexation to another corporation, in the absence of any provision or arrangement as to the liabilities of the former, the latter is answerable therefor, does not apply.

(2) A reorganized corporation, so called, entitled under sec. 1788, Stats. 1898, to exercise the rights, privileges, and franchises of its predecessors, is not a continuation of the old corporation, but an entirely new body entitled to hold and enjoy the property formerly owned by the old corporation free from the latter's liabilities, including liens against such property not prior to that through which the new corporation acquired title.

(3) A mortgage of the property, rights, and franchises of a corporation carries with it the right, under sec. 1788, Stats. 1898, in case of the legal title being acquired under the mortgage by a new corporation organized for purposes similar to those of the mortgagor, to exercise all the rights, privileges, and franchises of the old corporation. Its purpose is to add to the value of the property, as security, the incident of a successor corporation having the same

National Foundry & Pipe Works vs. Oconto City Water Supply Co.

rights as its predecessor, free from all its liabilities which were not liens thereon under the prior corporate ownership paramount to the lien forming the basis of the new title.

(4) The rule rendering a new owner of property liable for liens resting upon it,— that he must bear the burdens who would derive the advantages,— does not apply, because the title came to respondent free from any claim of the appellant.

(5) The commencement of the lien suit in the federal court did not conflict with the jurisdiction of the state court of the action subsequently commenced to foreclose the mortgage, since the subject of the first suit was distinct from that of the second, and the federal court did not acquire actual possession of the property.

(6) When pleaded facts constitute a defense without any judgment decreeing affirmative relief, it is not error to adjudge affirmatively the existence of such facts, if established by evidence, and the legal effect thereof, though there be no prayer for affirmative relief in the answer.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Oconto county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

The Oconto Water Company,— a corporation organized to construct a system of waterworks in the city of Oconto, and to which, prior to the creation of the indebtedness hereafter mentioned, such city granted the usual franchise to construct, maintain, and operate such a system, to furnish water for public and private use in such city,— between September 8, 1890, and November 24, 1890, became indebted to the plaintiff for pipe which was used in such construction in the sum of $25,637.32. September 13, 1890, the water company mortgaged its franchises and property to Andrews & Whitcomb, under which mortgage, and two others subsequently executed, the mortgagees loaned to the water company $64,000, which was used in constructing the waterworks. Plaintiff seasonably filed a petition for a lien for its claim on the waterworks plant under ch. 143, R. S. 1878. Such proceedings were had in the federal court for the Eastern district of Wisconsin, in an action brought by the plaintiff against

the water company to enforce such lien, that a decree·was
entered in plaintiff's favor in due form of law October 3,
1892. Plaintiff also obtained a judgment at law for the
amount of its claim, in the same court. June 17, 1891, An-
drews & Whitcomb commenced an action in the state court
to enforce their mortgages, and such proceedings were duly
had therein that a decree of foreclosure and sale was en-
tered in due form of law August 13, 1891, pursuant to which
the waterworks plant and the rights and franchises of the
company, including all the property covered by such mort-
gages, were sold to the mortgagees, and thereafter the sale
was duly confirmed and a deed executed and delivered in
accordance therewith. After the title was vested in An-
drews & Whitcomb as aforesaid, and on the 12th of July,
1892, they transferred the property to the defendant, the
*Oconto City Water Supply Company,* a corporation organ-
ized for the purpose of purchasing the property and obtain-
ing the powers and privileges conferred by sec. 1788, Stats.
1898. January 11, 1892, plaintiff commenced a creditors'
suit in the federal court, supplemental to its judgment at
law against the Oconto Water Company and Andrews &
Whitcomb. One of the purposes of such suit was to obtain
a decree of priority of its lien claim over the title of An-
drews & Whitcomb under the mortgage foreclosure pro-
ceedings. In such action the rights of all the parties, in-
cluding the right of plaintiff to a lien under the laws of this
state as against Andrews & Whitcomb, were presented to
the court for adjudication. The claim on the part of An-
drews & Whitcomb was that they were not bound by the
lien judgment because not made parties to the suit to en-
force it, and that the waterworks property was not subject
to the laws of this state respecting mechanics' and material-
men's liens. On the part of the plaintiff, the validity of the
mortgages under which Andrews & Whitcomb claimed title
was attacked, and it was further claimed that its lien was
a first claim against the water company property, and that

it should be so adjudged in the creditors' suit. Before the case was finally determined this court decided, in *Chapman Valve Mfg. Co. v. Oconto W. Co.* 89 Wis. 264, that a waterworks plant, provided by a city by contract with a private corporation, for the protection and convenience of its citizens, is not subject to lien claims under ch. 143, R. S. 1878. The federal court entered a decree in the creditors' suit sustaining the lien judgment, and that it was binding upon Andrews & Whitcomb as privies of the water company, the theory that they were so circumstanced being based on the fact that they were the owners of the stock of the water company when the indebtedness for which the lien was claimed accrued. The cause was carried to the court of appeals where the decree, so far as adverse to Andrews & Whitcomb, was reversed, that court holding that their mortgages covered all the water company's franchises as well as the plant; that the question of the validity of the plaintiff's lien, as between them and the water company, was *res adjudicata*, but that it was not binding on and that plaintiff had no lien as to Andrews & Whitcomb; that independent of the effect of the judgment upon the parties to the lien suit and their privies, plaintiff's claim was not lienable under the statutes of Wisconsin; that Andrews & Whitcomb were not privies of the water company, or affected by the lien judgment in any way whatever; that the lien claim as to them was void, and that the title acquired by them under the mortgages was paramount to plaintiff's claim under the lien judgment. A mandate in accordance with such decision was duly filed in the lower court. Thereafter plaintiff caused the lien judgment to be enforced in form by a sale of the waterworks property by the United States marshal, a confirmation of such sale, and the issuance of a marshal's deed pursuant thereto to the plaintiff as purchaser, the deed purporting to convey all the right, title, and interest which the Oconto Water Company had in the property described in the lien decree on the 15th day of September, 1890.

Thereafter this action was brought to compel the defendant company to surrender the waterworks property to plaintiff upon the theory that defendant, .by organizing under the statute to acquire title to such property and the right to exercise all the rights, privileges, and franchises of the old corporation, and taking such property with knowledge of plaintiff's lien, became a mere continuation of the old organization under another name. Judgment was prayed for against the defendant for the amount of the plaintiff's claim against the old water company, and that they be given possession of the waterworks property; that defendant be enjoined from using such property, particularly the pipes furnished by plaintiff which were used in its construction, unless, within a reasonable time, defendant should pay its claim.   Defendant answered the complaint and the issues thus formed were tried and determined, the decision being. to the effect that in the action in the federal court, to which the plaintiff and defendant were parties, it was decided that plaintiff was not entitled to any lien upon the waterworks property as against the title under the Andrews & Whitcomb mortgages; that the issues raised in this case were all presented in the case in the federal court and were adjudicated adversely to the plaintiff, and that such adjudication is binding between the parties and conclusive in this action; that Andrews & Whitcomb knew, from prior to December 1, 1890, of the facts in regard to plaintiff's claim. Judgment was rendered accordingly, and dismissing the complaint, and plaintiff appealed.

For the appellant there was a brief by *Miller, Noyes, Miller & Wahl,* and oral argument by *George H. Noyes.*

*Geo. G. Greene,* for the respondent.

MARSHALL, J.  Appellant's counsel mainly rely on the proposition that where one corporation goes out of existence by being annexed to or merged in another, no arrangements

being made respecting the payment of the liabilities of the former, the latter will be entitled to all the property and answerable for all the liabilities. That is familiar. No need exists to go outside this state for authority to support it. *Knight v. Ashland*, 61 Wis. 233. In that case, speaking of the devolution of liability of a town that had passed out of existence, upon an existing town to which the territory of the former had been attached, it was said that the authorities are that the simple vacation of a town by legislative enactment, and the attachment of its territory to another town without any direction as to the payment of the liabilities of the former, renders the latter liable for such liabilities. Other cases are to the same effect. *Schriber v. Langlade*, 66 Wis. 616; *Butternut v. O'Malley*, 50 Wis. 333; *Pennison v. C., M. & St. P. R. Co.* 93 Wis. 344. However, .the applicability of that principle to the facts of this case is not perceived. The Oconto Water Company did not go out of existence either by being annexed to or merged in another corporation. True, it went out of business, and for all the purposes of its organization was destroyed by the enforcement of the Andrews & Whitcomb mortgages, but not by any contract with the defendant corporation, or any arrangement with it or any person or party with whom or to which it was a party, by which the mere destruction of the corporation was of any benefit to such person or party, or by which such person or party obtained any property or right not paid for at its full value by a cancellation of the mortgage indebtedness, which antedated the lien of the plaintiff so far as relates to the owners of the mortgages or the person claiming under them. There was no merger of corporate interests, or attachment of the rights of one to those of another; but one was, to all intents and purposes, destroyed as an artificial body, and another corporation, new and distinct from the old one, was created, with such powers as it was the *bona fide* purchaser of, under proceed-

ings adverse to the old corporation, and which it had the right to exercise by force of the statute. A moment's consideration of the reason of the rule invoked by plaintiff will show that it has no room to operate here. It is a rule of equity and to prevent fraud; so, where all the property of one corporation is transferred to another without other consideration than that growing out of or incidental to the consolidation, the presumption arises either that it was the intention of the parties that the successor corporation would assume the payment of the debts that were equitably a claim upon the property succeeded to, or that the transaction was a fraud on creditors and voidable as to them. The idea is that a successor corporation receives benefits from such a succession equitably applicable to the payment of the debts of the former proprietor, and therefore, to the extent of such benefits, is liable for such debts. From that, a contract liability is implied, which the successor corporation cannot be heard to deny, otherwise it would be allowed to defend on the ground of such wrongdoing as, of itself, would avoid the transaction altogether as to creditors, on the ground of fraud. As said in *Mt. Pleasant v. Beckwith*, 100 U. S. 514, 'The corporate property passes into the hands of its successor, and where the benefits are taken the liabilities are assumed, the rule being that the successor who takes the benefits must take the same *cum onere*, and it cannot deny that it is liable for the attendant burdens.' Here, if the Andrews & Whitcomb mortgages were valid liens upon the waterworks property paramount to plaintiff's claim, so that by the enforcement of the mortgages the purchaser at the foreclosure sale only obtained the benefit of the mortgage security, they became possessed of no benefit that they did not fully pay for, or anything that was equitably applicable to the payment of plaintiff's claim. The essential of prior equity of plaintiff in the property, which is an absolute essential to the liability of the new owner of

such property for the debts of its predecessor, does not exist, so the principle invoked does not apply.

The learned counsel for appellant, overlooking, as it seems, the reason of the rule which makes a successor corporation liable for the debts of its predecessor, seek to apply it as broadly as the literal sense of the language of the proposition of law will permit, that is, to take in every case of a corporation that succeeds to the property of another, regardless of whether it thereby takes anything of value to which creditors have a legal or equitable right, or whether the succession is by contract and voluntary or adverse and involuntary as to the old proprietor. To maintain that defendant is a successor corporation, within the meaning of the doctrine under discussion, because of having absorbed the old water company, reliance is placed on sec. 1788, Stats. 1898, which provides that, "Any person or association of persons which shall have or may hereafter become the owner or assignee of the rights, powers, privileges and franchises of any corporation created or organized by or under any law of this state by purchase under a mortgage sale, . . . may, at any time within two years after such purchase or assignment, organize anew by filing articles of organization as provided in this chapter or elsewhere in these statutes respecting corporations for similar purposes, and shall thereupon have the same rights, privileges and franchises which such corporation had or was entitled to have at the time of such purchase and sale and such as are provided by these statutes applicable thereto." That idea has not the merit of novelty. It has often been presented to this and other courts in behalf of persons circumstanced as plaintiff is, and as often the new corporation has been held free from all liabilities to the creditors of the old corporation. The decisions to that effect are so numerous and so clear that we must assume that they have not escaped the notice of the learned counsel for appellant. The first instance where the ques-

tion was adjudicated by this court is *Vilas v. M. & P. du C. R. Co.* 17 Wis. 497. The defendant was organized by purchasers at mortgage sales, under a legislative enactment clothing the new company with all the rights and privileges of the old company. Vilas, as a general creditor, advanced the same proposition as that under consideration. The court held that such proposition was directly contrary to the whole purpose of the statute; that the legislative intent was to give full effect to the mortgage as security, while the construction contended for would destroy the security; that the proceedings under such a law are adverse to the old corporate organization, which, of itself, distinguishes them from those that render a successor corporation liable for debts of its predecessor; and that there is no good reason why the two situations should ever be confounded. That was affirmed in *Smith v. C. & N. W. R. Co.* 18 Wis. 17. In that case there was the additional element that the mortgage sale was for the benefit of the stockholders and creditors under an agreement that there should be a reorganized corporation in which the stockholders and creditors of the old company might participate. Yet the court hold that the sale cut off all the rights of the old company and its creditors; that the reorganized company was a new and entirely independent organization against which the creditors of the old company had no claim whatever except such as they obtained by the agreement entitling them to become stockholders in such company.

The same subject was again presented in *Neff v. Wolf River B. Co.* 50 Wis. 585, where sec. 1788, Stats. 1898, as originally enacted in ch. 115, Laws of 1872, was considered and construed. The trial judge decided, as appellant's counsel here contend, that the reorganized corporation was a mere continuation of the old company and liable for a wrong committed by it. That was reversed on appeal, this court holding that there is nothing in the statute which furnishes

a reasonable ground for saying that a reorganized company, pursuant thereto, is a continuation of the old corporation; that the purpose of the law is to clothe the new company with the charter rights of the old organization, not to continue the former in any sense. The court seems to have treated the contention to the contrary as a very near approach to the absurd, as evidenced by the following language by Mr. Justice Lyon, who wrote the opinion: "If the learned circuit judge interpreted the statute correctly, we cannot see why the defendant corporation is not liable for the debts of the old company, if it is indebted. If its liability goes to that extent, the act would be inoperative and useless in most cases; for no purchasers of the assets of an insolvent corporation would take the risk of organizing under the act, when to do so would make them liable for the debts of the old corporation. We think the purpose of the act was to secure to purchasers at judicial sales the right to use and enjoy the franchises which had been conveyed to them in form" under a judgment or decree. To the same effect are *Wright v. M. & St. P. R. Co.* 25 Wis. 46; *Gilman v. S. & F. du L. R. Co.* 37 Wis. 317; *Pennison v. C., M. & St. P. R. Co.* 93 Wis. 344; *Menasha v. M. & N. R. Co.* 52 Wis. 414; *Memphis W. Co. v. Magens & Co.* 15 Lea, 37; *Hoard v. C. & O. R'y,* 123 U. S. 222; *Chesapeake & O. R. Co. v. Miller,* 114 U. S. 176; *Cook v. D., G. H. & M. R. Co.* 43 Mich. 349; *Houston & T. C. R. Co. v. Shirley,* 54 Tex. 125; *Thornton v. Wabash R. Co.* 81 N. Y. 462; *Glenn v. Statler,* 42 Iowa, 107.

The foregoing is but a small part of the numerous cases in the books on the question under consideration. They show how frequently the principle, which protects the right of creditors to be paid out of corporate property against schemes worked out by contract or by legislative enactment to merge one corporation or all the property of one corporation in another, has been confounded with the circumstance of a corporation, by adverse proceedings to en-

force a mortgage upon corporate property, becoming legitimately possessed of it by a sale, cutting off the rights of creditors having a junior or no lien on said property. In the former case the new possessor of the property takes that which creditors have a right to resort to for the satisfaction of their claims; in the latter such possessor takes only that for which full value was parted with to the old company at the time the mortgage was placed on the property, or thereafter, pursuant to its terms. In the former circumstances the proceedings are all voluntary; in the latter, involuntary and adverse. The defendant became the *bona fide* owner, for full value, of the property of the Oconto Water Company, and all the franchises possessed by it for the profitable use and enjoyment of such property. The purchasers at the foreclosure sale took title to the property with the incidental right conferred by sec. 1788, Stats. 1898, to form a new corporation to take the same by assignment and possess the rights of the old organization. When the mortgages were given sec. 1788, Stats. 1898, became a part of them and a very material element in the value of the security. The right guaranteed by such section was as much a part of the mortgage security as the tangible property described. The theory of the appellant is that the statute, clothing a corporation circumstanced as the defendant is with the right to exercise the powers, privileges, and franchises possessed by the old corporation, which it shall have acquired *bona fide*, by mortgage sale, or by assignment based on a title acquired through such a sale, instead of adding to the value of a corporate mortgage covering all the property of the corporation, tangible and intangible, impairs it and may destroy it, because a new corporation cannot be organized with the benefits of the statute without incurring the penalty of being liable for all the unsecured indebtedness of the old corporation, whether before the foreclosure sale the owner of the mortgage indebtedness had

a first lien on the property or not. In other words, that the statute not only operates to prevent the general creditors from being cut off by the foreclosure proceedings, but transposes the parties so as to give the general creditors a claim on the property paramount to the mortgage. The statute will not admit of a construction leading to such an absurd result even if the question were an open one, and it is not, as we have seen. The manifest purpose of it, as indicated, is to add to the value of a corporate mortgage of the kind under consideration. That is too plain to admit of serious controversy. Candor compels us to say that we do not think that the contrary theory merits the consideration we have given to it, since its fallacy is so glaringly apparent and has so often been exposed in this and other courts.

In view of the foregoing it is not important to inquire whether the franchise to exist as a corporation, possessed by the Oconto Water Company, passed by the foreclosure sale to Andrews & Whitcomb and was by them conveyed to the defendant, or whether such right is included in the term " rights, powers and privileges " used in sec. 1788, Stats. 1898. Counsel for appellant rely on the affirmative of those propositions. Whether they are right or wrong is immaterial to this controversy, for, as indicated in *Neff v. Wolf River B. Co.* 50 Wis. 585, the reorganized corporation, so called, is not the old corporation revived by authority of sec. 1788, but a new organization under the general statutes governing the creation of such bodies, clothed, however, by the statute, with the undoubted right to use the rights conveyed to it, in form, by a chain of title based on the foreclosure sale, the plain purpose of the law being to place the new organization in the same situation as the old corporation as regards the use of rights, privileges, and franchises derived from sovereign authority, in connection with the tangible property covered by the mortgage, freed, however, from the liabilities of such corporation not, before the sale,

liens upon the property paramount to the mortgage lien. We fail to find anything in any of the numerous cases to which appellant's counsel have called our attention, inconsistent with this view.

It is further contended that the maxim " *Qui sentit commodum sentire debet et onus* " (He ought to bear the burden who would derive the advantage) applies. One of the essentials to the application of that maxim is that the interest in the thing enjoyed, from which springs the duty of bearing its burdens, legally or equitably belongs to him to whom the duty is due. The duty grows out of such ownership. Another essential is that the burden must really rest on the thing and be paramount to the right of him who appropriates the advantages. The extent of the advantages is the limit of the burdens.

To satisfy the above indicated requirements, we are told that when Andrews & Whitcomb purchased the waterworks property at the foreclosure sale they knew that plaintiff had an adjudged lien thereon for the amount of their claim, good against the common debtor, and that the respondent was likewise circumstanced when it took the title; therefore, though it may be conceded that title passed to the respondent, it was subject to the lien judgment, and the respondent should not be allowed to use such property except upon condition of paying the appellant's charge upon it. If that is good law, all a junior lien claimant need do to acquire precedence over the prior lien is to obtain a judgment for the enforcement of it in an action to which the prior lien claimant is not a party. We cannot agree with that proposition. The rights of Andrews & Whitcomb under their mortgages, relative to the rights of the appellant under the claim for a lien on the mortgage property, were not affected in the slightest degree by the judgment in the federal court in the lien suit. They were not parties to it or in privity with the Oconto Water Company so as to be

bound as such. That seems too clear for serious controversy, and was adjudicated between the parties in the creditors' suit. So, if the appellant was not entitled to a lien on the waterworks plant as against Andrews & Whitcomb, the latter derived no advantage from the foreclosure sale except that for which they gave a full equivalent by a satisfaction of the mortgage indebtedness. They took the property without any burden resting upon it, hence incurred no duty within the maxim which the learned counsel invoke.

*Pfeifer v. S. & F. du L. R. Co.* 18 Wis. 155, and other cases of similar character are confidently cited to our attention. The *Pfeifer Case* involved the liability of a successor railway company to pay for land wrongfully taken by its predecessor for right of way, as a condition of being permitted by the owner to use such land for that purpose. The foundation of the claim adjudged was that the land belonged to the claimant and could not be appropriated for the use of another except on condition of rendering an equivalent therefor. Obviously, before that principle can be applied to this case, it must be demonstrated that defendant is in possession of property which belongs to the appellant or in which it has an interest paramount to the rights of the respondent. That stands in the way of all the learned counsel's contentions. The erroneous assumption that respondent has appropriated something which belongs to appellant seems to be an infirmity which pervades and condemns substantially all the propositions advanced. If the property was not subject to a lien under ch. 143, R. S. 1878, and this court has so decided, and respondent is not affected by the judgment in the action in the federal court to which its grantors were not parties, and that has been decided in previous litigation between the parties to this cause, then the premises are all absent which are necessary to give effect to *Pfeifer v. S. & F. du L. R. Co.* It will not do to assume that Andrews & Whitcomb, by the legitimate enforcement of their

mortgages, and respondent, by taking title from them, appropriated property belonging to appellant, and thereby reach a conclusion that respondent is liable to bear the burden of appellant's claim. That process of reasoning could not fail to lead to most illogical and absurd results. We cannot proceed logically to correct conclusions, except by demonstrating, step by step, the truth of minor propositions upon which such conclusions must rest. Mere assumption as to any essential premise renders the result of the reasoning of no value; and demonstrated nonexistence of such premise has the same effect. That seems to apply to all that part of the argument for a reversal upon the theory that the maxim, " *Qui sentit commodum sentire debet et onus*," applies to the facts of this case.

The question of whether the trial court erred in deciding that the judgment of the federal court is *res adjudicata* on all points upon which appellant relies to recover, is presented for consideration. It is elementary that all questions appertaining to a cause of action, within the issues, and actually litigated or which might have been litigated, are irrevocably answered by the final decree, so far as affects the parties to such action as regards the subject thereof. That, of course, includes not only the primary right sought to be enforced by the action, but matters germane to and actually involved in it. *Wentworth v. Racine Co.* 99 Wis. 26. It is conceded that under that rule it was not open for appellant in this case to litigate the question of whether its lien judgment was binding on the respondent. But it is said, the right of appellant to hold the respondent liable for its claim, upon the ground that the latter took the property in controversy subject to its lien claim, was not involved in the former litigation or presented to the court or decided. It is with some difficulty, we confess, that we can follow the course of reasoning which leads to the statement of such premises as correct or the conclusion based thereon. The

validity of the Andrews & Whitcomb mortgages, and the title acquired through the foreclosure of them, were subjects of controversy in the creditors' suit. The pleadings show that, and the opinions filed as well. If appellant was possessed of a claim upon the property, either by reason of the judgment against the Oconto Water Company or otherwise, paramount to the rights claimed under the Andrews & Whitcomb mortgages, they were entitled to have had such claim declared to them in the creditors' suit. The object sought by such suit was to obtain a decree to the effect that appellant was entitled to the property in controversy, as it stood September 15, 1890, free from any claim of Andrews & Whitcomb or any other party to the action. That brought before the court for adjudication the nature and validity of the title obtained through the foreclosure proceedings, not only as regards whether it was affected by the lien decree against the Oconto Water Company because of Andrews & Whitcomb's connection with such company, but whether such title was subject to the appellant's claim under any circumstances. An examination of the pleadings in the creditors' suit leaves no doubt on that question, and by reference to the published opinions of Judge Woods in the case, it appears that all the matters involved in the controversy above mentioned were actually decided. We might quote at length from such opinions, found in *Andrews v. Nat. F. & P. Works*, 76 Fed. Rep. 166, and 77 Fed. Rep. 774, conclusively establishing what is here said, but it is not deemed necessary. It is sufficient to say that in our judgment the decision in the creditors' suit is just as decisive that the title acquired by the foreclosure sale passed to the purchasers free and clear of any claim of the appellant, as it is that Andrews & Whitcomb were not bound by the lien judgment. Appellant's counsel concede that the effect of the decree is that their claim was not a lien upon the water company's property as against the Andrews & Whitcomb mortgages.

With that concession, there was nothing left undecided, as it seems, which is involved in this case. If there was no lien as against the mortgagees, the owner under the foreclosure sale did not take any benefits which belonged legally or equitably to appellant. .

It is further contended that the state court had no jurisdiction to decree the foreclosure and sale under the mortgages, because, prior to the commencement of the foreclosure action, the federal court had acquired jurisdiction to enforce appellant's lien, which drew to that court all questions regarding the rights of the mortgagees. The one sufficient answer to that is, as counsel for respondent suggests, that the appellant's lien having been adjudged void as to respondent, and it being conceded or undisputed that respondent is legally in possession of the mortgaged property, with at least the rights of mortgagees so circumstanced, it cannot be ousted from that possession without payment of the mortgage indebtedness, nor can it be made to pay junior liens as a condition of enforcing its primary right.

But it is not the law that the commencement of a suit in the federal court, to enforce a mechanic's or materialman's lien on property, precludes the foreclosure of a mortgage on the same property in the state court. The lien action was not *in rem*, except in a qualified sense. There was no seizure of property, and no possession of it taken by the court, or necessary to the lien action at any stage of it. The situation was essentially different from one where the property is in the actual custody of the federal court. It is held, in the latter case, that an action cannot be instituted in the state court and proceedings had therein to the extent of disturbing such possession. Where there is no possession other than constructive, a suit on a different cause of action may be commenced in the state court and carried to judgment and actual possession of the property obtained under it, notwithstanding the pendency of the action in the fed-

eral court. *Compton v. Jesup*, 68 Fed. Rep. 263. That does not militate at all against the principle that where the federal court acquires jurisdiction of a suit, such jurisdiction is exclusive as to the subject matter thereof and property affected, in its actual custody. The subject matter of the lien suit was the enforcement of a materialman's lien under the laws of this state, against the Oconto Water Company. In respect to that, the jurisdiction of the federal court was exclusive, but it did not include any question regarding the rights of the mortgagees. They were not necessary parties, were not made parties, and were not affected by the result. The subject matter of the foreclosure action was an entirely different matter. True, Andrews & Whitcomb might have been made parties to the lien action, but they were not. The plaintiff was not obliged to make them parties, neither were they called upon to request to be made such for the protection of their rights. Such rights were in no way involved in the mere question of the right of lien as against the Oconto Water Company. One may easily be led astray on questions of conflicting jurisdiction between state and federal courts by not keeping in mind that it is the subject of the action first commenced in the latter court, and control and disposition of property in the actual custody of such court, as to which its power is exclusive. The mere fact that a suit is pending in the federal court on one cause of action or subject of action, affecting property not in the custody of the court, does not prevent the commencement or prosecution of any number of other actions between other parties on other causes or subjects of action affecting the same property, or prevent the property from being seized in such other actions, so long as no prior possession of the *res* by the federal court is disturbed. *Compton v. Jesup, supra.* In *Gumbel v. Pitkin*, 124 U. S. 131, we have a fair type of the cases cited to our attention to support a contrary view, but an examination of it will disclose that

the property was in the actual custody of the court, and that solely on that ground it was held that the court had exclusive jurisdiction. It was distinctly held that when the federal court has possession of property under a writ of attachment, a writ may properly be issued in an action in a state court on another cause of action, against the same property, and a constructive levy be made thereon by a proper notice to the United States marshal having possession thereof, and that the cause in the state court may proceed to judgment; and after the plaintiff's rights therein shall have been adjudged he may apply to the federal court to have such rights protected in the distribution of the proceeds of the property by the latter court. Thus, it is seen that identity of subject of action, or disturbance of actual possession, is what limits the exclusive jurisdiction of the federal court as applied to this case. In that view it is readily seen that the proceedings in the state court to foreclose the Andrews & Whitcomb mortgages did not conflict in the slightest degree with the jurisdiction of the federal court to enforce appellant's lien against the Oconto Water Company.

The only other question that need be noticed is a claim that the court erred in granting affirmative relief to respondent. The theory advanced is that in the absence of a counterclaim, or prayer for affirmative relief, no such relief whatever can be granted. On that, *Casgrain v. Milwaukee Co.* 81 Wis. 113, is cited. The affirmative relief there involved was the reformation of a written instrument. Also *Weld v. Johnson Mfg. Co.* 86 Wis. 549, where an accounting was necessary to make the defense effective; moreover it was an action of ejectment where an equitable defense was pleaded under the statute, which says that the defendant shall demand such judgment as he claims. Neither case has any bearing on the point here raised. *Reynolds v. Stockton*, 140 U. S. 254, is also cited. There the matter ad-

judged was entirely outside the issues made by the plead-
ings. The question of whether the judgment could have
been thus broad without a prayer for relief consistent there-
with, had the issues been thus consistent, was not consid-
ered or decided. 11 Ency. of Pl. & Pr. 868, 877, 879, is
also called to our attention. There it is said that the judg-
ment must be no broader than the issues and that affirma-
tive relief should not be granted except in conformity with
the pleadings, but that such relief is proper where justified
by the pleadings and proof, though not prayed for. Sec.
2883, Stats. 1898, provides that the judgment may give
to a defendant any affirmative relief to which he may be
entitled. This court early held that under such provision,
a prayer for relief in the answer, though proper, is not nec-
essary. *Benedict v. Horner*, 13 Wis. 256. "Its language,"
said the court, " is applicable to all issues. . . . The
fact that affirmative relief is not prayed for is not material.
The facts constituting the foundation for it being suffi-
ciently stated, that is all that is now required by law."
Here the facts affirmatively adjudged in defendant's favor
were pleaded as a defense. The allegations showed, if true,
the paramount character of defendant's title, and they
were established on the trial. The decree, in form, follows
the issues so established in defendant's favor. It is no
broader and of no more effect than a mere judgment of dis-
missal on the merits. Such a judgment would be *res ad-
judicata* as to all questions embraced within the issues.
*Amory v. Amory*, 26 Wis. 152; *Durant v. Essex Co.* 7 Wall.
107; *Swan L. & C. Co. v. Frank*, 148 U. S. 603.

A judgment granting affirmative relief on a matter prop-
erly the subject of a counterclaim, and which cannot be
made effective without such relief, as in case of the reforma-
tion of a written contract, of course is not proper. The rule
above discussed does not apply to such a case. Where, how-
ever, facts pleaded as a defense, when established, are ef-

fectual to defeat the plaintiff's cause of action without any affirmative relief, then a judgment formally adjudicating the existence of such facts, or the effect of them, is always proper. A judgment of dismissal of the plaintiff's complaint covers the ground, but the more formal judgment, expressing upon its face the effect of the adjudged facts, goes no further, and may be considered a correct, if not the better, practice. The judgment appealed from is in strict conformity with the foregoing. The trial court found the facts, and as the legal effect thereof decided that plaintiff was not entitled to any lien on the property in controversy; that defendant was the owner and holder of the property free and clear of any claim of the plaintiff; that plaintiff was not entitled to any relief in the action; and that defendant was entitled to a judgment on the merits dismissing the complaint and the action. The judgment entered, in addition to the formal dismissal of the complaint and action, adjudged the effect of the facts as contained in the trial court's conclusions of law upon which the entry of the judgment of dismissal was directed.

The foregoing leaves nothing further to be said. The record appears to be free from error. The judgment must be affirmed.

*By the Court.*— Judgment affirmed.