WASHBURN WATER WORKS COMPANY, Respondent, vs. CITY
OF WASHBURN, Appellant.

*May 9—June 21, 1906.*

*Municipal corporations: Waterworks: Contract to pay hydrant rentals: Liability of city as successor of town.*

For the benefit of the inhabitants of an unincorporated village
therein a town passed an ordinance granting to plaintiff's assignors a franchise for the construction of waterworks in said village and contracting to pay certain hydrant rentals, etc. The
waterworks plant was constructed by plaintiff wholly within
the limits of the village. Afterwards the village became incorporated as a city, and plaintiff continued to furnish water to
the city and its inhabitants under the terms of the ordinance
contract, all parties acting upon the assumption that the city
had succeeded to all the rights and liabilities of the town thereunder. The town thereafter was not concerned in the waterworks property, exercised no supervision over it, and derived no
benefit from it. *Held*, that the city was bound by the ordinance
contract as the successor of the town.

APPEAL from a judgment of the circuit court for Bayfield
county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

The plaintiff in this action presented its claim to the common council of the city of *Washburn,* defendant, for $5,300,
claimed to be due for the year ending January 1, 1905. The
claim was allowed at $852, and an appeal taken by plaintiff
to the circuit court. The court directed that formal pleadings be made, which was done.

The complaint alleges, in effect, the corporate existence of
the plaintiff, and that defendant is one of the duly organized
cities of the county of Bayfield, Wisconsin; that prior to the
6th day of May, 1889, the town of Washburn contained the
unincorporated village of Washburn with more than 1,000
inhabitants, and that the electors of said town at the annual
meeting prior to the 6th day of May, 1889, conferred upon
the town and town board all powers relating to villages and

conferred upon village boards by ch. 40, R. S. 1878; that on
May 6, 1889, the town board of the town of Washburn duly
passed and published an ordinance for the construction of
waterworks in said town for the purpose of obtaining a water
supply, and with all the necessary machinery and attachments
to supply the town and its inhabitants with water suitable for
fire and domestic purposes, and empowered Lewis & Maxcy,
grantees in said ordinance, their representatives and assigns,
to construct the same and occupy the streets of said village of
Washburn and town of Washburn in said county of Bayfield
for such purposes, and agreed to and did rent hydrants from
said grantees or their assigns for a term of years, and agreed
to pay an annual rent of $4,000 in semi-annual instalments
therefor, together with town and municipal taxes which might
be assessed against the grantees or their assigns for the first
ten years, the town reserving the right at the expiration of a
term of years to purchase the works from said grantees or
their assigns, together with extension rights and franchises;
that the plaintiff duly succeeded to the rights of Lewis &
Maxcy under said ordinance with said town of Washburn and
constructed the works in the unincorporated village of Wash-
burn; that in April, 1904, the inhabitants of the unincorpo-
rated village of Washburn voted to incorporate a city under
the general laws of the state, and a charter was duly issued
and the territory comprising the unincorporated village of
Washburn became a city of the fourth class known as the city
of *Washburn,* defendant in this action; that, ever since the
organization of the city of *Washburn,* the plaintiff has con-
tinued to supply defendant with water under the terms of the
ordinance, and that the amount due for supplying water un-
der said ordinance to July 1, 1904, is $2,650, and to January
1, 1905, $2,650, which sum was due January 1, 1905, and
that the city became indebted to the plaintiff for said sum;
that at all times since the incorporation of the city the officers
thereof and the plaintiff have assumed that the relations be-

tween them were governed by the terms of said ordinance, and
that the city assumed all the rights and privileges of the town
of Washburn and recognized and acquiesced in the rights of
the plaintiff thereunder, and that by reason of the actions of
the city and its officers there has been a novation of the said
ordinance, and that the city is estopped from denying the ex-
istence of the contract with the plaintiff.

The defendant answered, admitting the corporate existence
of the plaintiff and defendant, as well as the corporate exist-
ence of the town of Washburn, and that the town of Washburn
contained the unincorporated village of Washburn, having
more than 1,000 inhabitants, and that the electors conferred
on the town board the powers conferred on village boards;
also admitting that the ordinance referred to in the complaint
was adopted and published, and that the plaintiff constructed
its waterworks system wholly within the limits of the unin-
corporated village of Washburn, and has operated the same
since October, 1889, and that the population of the city of
*Washburn* is about 5,000 and that of the town of Washburn
about 500, and that about fifty-five per cent. of the value of
the property in the old town of Washburn is now situate in
the city of *Washburn*. Defendant further set up a counter-
claim to the effect that on the 18th day of July, 1904, the
town of Washburn recovered a judgment for delinquent per-
sonal property tax against the plaintiff in the sum of $2,310,
which has not been paid, and that fifty-five per cent. thereof
belonged to the defendant, and that plaintiff is indebted to the
defendant in the sum of $1,969.60 for taxes due defendant
for the year 1904, and that in 1904 the town of Washburn re-
covered a judgment against the plaintiff in the supreme court
for the sum of $52, no part of which has been paid, fifty-five
per cent. of which belonged to defendant, and demanded judg-
ment on said counterclaim against plaintiff for $4,331.60,
with interest and costs.

The case was tried by the court and a jury in May, 1905.

The court submitted to the jury the question of the reasonable rental value of the hydrants for the year 1904, and the jury found the same to be $4,940. The court found as follows:

*Findings of fact:* That the number of hydrants used by defendant is as alleged in the complaint. That since the organization of the defendant as a city the plaintiff has continued to supply water to the city and the inhabitants thereof, under the terms of the ordinance and contract, set forth in the complaint, and the same has been used by such city. That, at all times since the incorporation of said city, said city and the officers thereof and the plaintiff herein have treated and assumed that the relations between plaintiff and defendant were wholly governed by the terms of the ordinance, and that the city succeeded to all the rights of the town under said ordinance, also all liabilities thereunder from and after the date of its incorporation. That said city has assumed all the rights and privileges of the town of Washburn under the ordinance set forth in the complaint. That the said city has recognized and acquiesced in all the rights of the plaintiff under the ordinance set forth in the complaint. That the plaintiff furnished water to the defendant under the terms of said ordinance for the months of May and June in the year 1904, and for the succeeding six months until January 1, 1905. That the population of the city of *Washburn* at the time of its incorporation was 5,000, and that the population of the town of Washburn at the time of the incorporation of said city was 500. That the valuation of the property included in the city of *Washburn* is fifty-five per cent. of the value of the property in the old town of Washburn, and that the value of the property in the present town of Washburn is twenty-nine per cent. of the valuation of the property of the old town of Washburn. That there was assessed against and is now due the defendant from the plaintiff for taxes in the year 1904, on its plant and franchise, the sum of $1,969.60. That the plaintiff's waterworks system is wholly constructed within the city of

*Washburn,* and that it is impossible for plaintiff to supply water to the town of Washburn.    That the town of Washburn is mostly inhabited by farmers and is sparsely populated, and includes five government townships.

*Conclusions of law:* That the city of *Washburn* assumed the ordinance set forth in the complaint, and that the same is a valid contract subsisting between plaintiff and defendant,. from the time of the organization of the city of *Washburn.* That the defendant became indebted to the plaintiff by reason of the furnishing and supplying of water under the terms of said ordinance in the sum of $3,533.35.    That there should be set off against said sum the taxes due the city of *Washburn* for the year 1904, to wit, $1,969.60.    That plaintiff is entitled to recover from defendant the sum of $1,563.75, with costs.

Counsel for defendant excepted to the findings of fact and conclusions of law and to the order directing judgment. Judgment was entered in favor of the plaintiff for the sum of $1,563.75 damages, together with costs, from which this appeal is taken.

*John Walsh* and *W. M. Tomkins,* for the appellant.

*A. W. McLeod,* for the respondent.

KERWIN, J.    The material facts in this case are covered by the findings heretofore stated.    The controlling questions involved are: (1) Whether the defendant city assumed the contract of the town with the plaintiff; and (2) whether fifty-five per cent. of the judgment in favor of the town and against the plaintiff should be set off against the claim made for hydrant rentals.    As appears from the findings of fact, the contract of the plaintiff with the town was in fact for the benefit of the inhabitants of the unincorporated village which afterwards became the incorporated city of *Washburn,* defendant in this action; the waterworks plant was constructed wholly within the territory comprising the city of *Washburn,* and

since its incorporation plaintiff has continued to furnish it and
its inhabitants with water according to contract, the town de-
riving no benefit whatever from the waterworks plant; the city
of *Washburn* and its officers and the plaintiff have assumed
that the relations between plaintiff and defendant were gov-
erned by the terms of the ordinance, and that the city suc-
ceeded to all the rights and liabilities of the town under such
ordinance from and after the date of the incorporation of de-
fendant; at the time of incorporation the population of the
city of *Washburn* was 5,000 and that of the town 500 ; and the
valuation of the property of the city of *Washburn* was greater
than the valuation of the property in the town.

It is claimed, however, by appellant that, the contract being
with the town, the city did not become liable upon it, on the
ground that, when the territory embraced within the limits
of the defendant city became detached from the town and
formed into a separate municipality, no liability followed the
new creation.   The case made here is not within the rule con-
tended for by the appellant.   No part of the waterworks plant
remained in the town after the incorporation of the defendant.
The town had no supervision over it, nor was it in any manner
interested in it.   It was retained, managed, and controlled
solely for the benefit of the city and wholly within its limits.
It was constructed for the benefit of the inhabitants of the un-
incorporated village of Washburn, and afterwards continued
for the benefit of such inhabitants under their organization
as the city of *Washburn*.   The appellant does not, as we un-
derstand his position, contend that the town is still liable, or
that the plaintiff's claim could be enforced against the town;
but it is insisted that the case is one where by operation of law
it has become impossible for the parties to the water contract
to perform, and that, where performance of a contract be-
comes wholly or in part impossible by reason of change in the
law, the contract is to that extent discharged.   We think it
very clear that the contract has not been extinguished or ren-

dered incapable of performance, but is still a valid, subsisting obligation, and the question here is whether it is enforceable against the defendant. While it was made in form with the town, it was in fact made for the benefit of the inhabitants of the unincorporated village situate within the limits of the town, and continued to be performed under the supervision of the town, for the benefit of such village, until the incorporation of the defendant city. The city of *Washburn* and its inhabitants are solely benefited by the supply of water. They alone are interested in the execution of the contract; they alone receive the benefits and should in equity and good conscience bear the burdens. *National F. & P. Works v. Oconto City W. S. Co.* 105 Wis. 48, 81 N. W. 125; *Mount Pleasant v. Beckwith,* 100 U. S. 514. It is not necessary to decide here, and we do not decide, whether the town remains liable upon the contract.

The history of legislation on this subject, we think, clearly shows that it was the intention of the legislature that cities incorporated under the established facts in this case should succeed to the rights, privileges, and liabilities of such contracts. Ch. 292, Laws of 1883, confers upon town boards in towns containing one or more unincorporated villages, having each a population of not less than 1,000, the powers relating to villages and conferred upon village boards by the provisions of ch. 40, R. S. 1878, and acts amendatory thereof, excepting those the exercise of which would conflict with the provision of law relating to towns and town boards, and makes them applicable to such unincorporated village or villages in such town, and may be exercised when directed by a resolution of the qualified electors of the town. The power to make the contract in question was conferred upon the town because it contained an unincorporated village of not less than 1,000 inhabitants, and obviously for the purpose of giving the unincorporated village within the limits of the town the same advantages as an incorporated village; the needs and neces-

sities of such unincorporated village necessarily requiring the
exercise of governmental powers somewhat different from the
ordinary township community, especially in regard to police
regulations, facilities for the extinguishment of fires, and care
and improvement of streets. *Land, L. & L. Co. v. Brown,*
73 Wis. 294, 40 N. W. 482. A franchise or contract to con-
struct waterworks can be conferred only through authority
delegated from the state. *Allen v. Clausen,* 114 Wis. 244, 90
N. W. 181. It is *quasi*-public in its nature. *State ex rel.
Att'y Gen. v. Janesville W. Co.* 92 Wis. 496, 66 N. W. 512.
Sec. 925—8, Stats. 1898, regarding the incorporation of
cities, provides, among other things, that 100 or more electors
and taxpayers of any village, incorporated or unincorporated,
may apply by petition to the trustees of said village or to the
proper town board to have the question of incorporating said
village, or the same and adjacent territory, containing to-
gether a population of not less than 1,500, as a city, submitted
to a vote of the electors of the territory described in the peti-
tion. Subsequent sections provide for the submission of the
question of incorporation to a vote of the electors residing
within the limits proposed and for the perfecting of such in-
corporation. The legislative scheme, therefore, obviously
was to give unincorporated villages the right to secure and
maintain waterworks within their limits under the supervis-
ion of the town board, the same as incorporated villages under
village boards. The legislature doubtless had in view that
the unincorporated village would form a nucleus for an in-
corporated village or city, and that waterworks constructed
by contract under such legislative authority for the benefit of
inhabitants of an unincorporated village should pass to the
village or city organized by such inhabitants in the manner
provided by statute.

It is contended on the part of the appellant that at common
law, upon division of a town, whether by creating a new town
or a city out of a part of the old town, the old town retained

all the property and was liable for all indebtedness. But the power to divide municipalities is strictly a legislative power, and the power to prescribe the rule by which a division of the property of the old municipality shall be made is incident to the power to make such division, and is in its nature legislative. Such division must rest upon the circumstances of each case. *Bristol v. New Chester,* 3 N. H. 524; *Laramie Co. v. Albany Co.* 92 U. S. 307; *Knight v. Ashland,* 61 Wis. 233, 21 N. W. 65. The doctrine upon which the division of property of municipalities is founded is an equitable doctrine resting upon the relative rights of the municipalities, the character of the property to be divided, and legislative regulation upon the subject. *Bloomfield v. Glen Ridge,* 54 N. J. Eq. 276, 33 Atl. 925; *Schriber v. Langlade,* 66 Wis. 616, 29 N. W. 547, 554; *Knight v. Ashland, supra; Broughton v. Pensacola,* 93 U. S. 266.

We have been cited by counsel on either side to no case precisely in point upon the main question before us, nor have we been able after much research to find any. But we think the principle enunciated in some of the cases cited sustains the liability of the defendant upon the facts established here. As we have already seen, the contract for waterworks and the construction thereof within the limits of the unincorporated village was for the benefit of the inhabitants thereof, and continued to be after incorporation of the defendant city. In municipal corporations it is the inhabitants and the territory which form the essential elements of the corporation, and where they are the same, or substantially the same, it will be presumed that the legislature intended a continued existence of the same corporation, although different powers are possessed under the new charter and different officers administer the affairs of the municipality. And, in the absence of express provision to the contrary, it will be presumed that the legislature intended the liabilities as well as the rights of property of the corporation in its old form should accompany the

corporation in its re-organization. *Broughton v. Pensacola, supra; Higginson v. Turner,* 171 Mass. 586, 51 N. E. 172. In *O'Connor v. Memphis,* 6 Lea, 730, 735, it is said:

"Neither the repeal of the charter of a municipal corporation, nor a change of its name, nor an increase or diminution of its territory or population, nor a change in its mode of government, nor all of these things combined, will destroy the identity, continuity, or succession of the corporation, if the people and territory re-incorporated constitute an integral part of the corporation abolished. The reason is to be found in the peculiar nature of such corporations. A charter for municipal purposes is an investing of the people of a place with the local government thereof, constituting an *imperium in imperio,* and the corporators and the territory are the essential elements; all else being mere incidents or forms."

And in *Mobile v. Watson,* 116 U. S. 289, 6 Sup. Ct. 398, it was held in effect that where the legislature of a state has given a local community living within the designated boundaries a municipal organization, and by subsequent acts repeals its charter and dissolves the corporation and incorporates substantially the same people under a new name for the same general purposes, and the great bulk of the taxable property of the old corporation is included within the limits of the new, and the property of the old corporation used for public purposes is transferred without consideration to the new for the same public uses, the latter, though greatly reduced in corporate limits, is the successor of the former and liable for its debts. To substantially the same effect are *Mount Pleasant v. Beckwith,* 100 U. S. 514, and *Girard v. Philadelphia,* 7 Wall. 1.

We think the principle of the cases cited and many others which may be found applies here. True, the corporate existence of the town continued after the organization of the city out of its territory. But the inhabitants of the unincorporated village, for whose benefit the contract was made, continued the inhabitants of the city. It is said by counsel for appellant that, where one corporation goes out of existence by

being annexed to or merged in another, no arrangement being made respecting the payment of the liabilities of the former, the latter will be entitled to all the property and be responsible for the liabilities; but it is insisted that the town of Washburn has never been dissolved, hence this rule does not apply. The situation, so far as the unincorporated village of Washburn is concerned, is the same as if the town had gone out of existence by merger or otherwise, since it has no further interest in the execution of the contract. The town is not concerned in the waterworks property, and can exercise no supervision over it or derive any benefit from it, and the rights of the inhabitants of the city of *Washburn* under the ordinance, if enforced at all, must be by the defendant city as the successor of the town. *Bloomfield v. Glen Ridge*, 54 N. J. Eq. 276, 33 Atl. 925; *Curtis v. Board of Education*, 43 Kan. 138, 23 Pac. 98. The findings of fact respecting the assumption of the contract by the defendant are fully supported by the evidence. The plaintiff continued to furnish water after the incorporation, and the city received it without objection, repeatedly acknowledged the existence of the contract, acted upon it through its officers, and treated it as a valid and existing obligation between the plaintiff and defendant. We conclude that the defendant city is bound by the contract or ordinance in question.

2. Counsel for appellant further claims that fifty-five per cent. of certain judgments recovered by the town of Washburn against the plaintiff should be offset against the plaintiff's claim in this action; but they fail to point out in their briefs upon what ground the same should be made, and we are unable to discover from the record any ground which would warrant such offset. The court below obviously disregarded this claim of appellant, and we find no error in this respect.

We are of the opinion that the judgment of the court below is right and should be affirmed.

*By the Court.*—The judgment of the court below is affirmed.