**PONDER v. SOUTHWESTERN HO-TEL CO. et al.**

**No. 3628.**

Court of Civil Appeals of Texas. El Paso.

Feb. 3, 1938.

Rehearing Denied Feb. 24, 1938.

Armstrong & Jaffe, of El Paso, for appellant.

Frank S. Anderson, of Galveston, and Jones, Hardie, Grambling & Howell, of El Paso, for appellees.

HIGGINS, Justice (after stating the case as above).

We shall not discuss the various theories advanced in the appellant's lengthy brief. Our conclusions will be briefly stated.

From the statement made it is apparent none of the defendants are personally and contractually liable on the bonds sued upon except the El Paso Hilton Company, the maker thereof, and against whom personal judgment in plaintiff's favor has been rendered for the amount due upon said bonds.

It is also manifest the lien securing the payment of said bonds has been apparently eliminated and lost.

Appellant seems to recognize this situation, but as we understand his theory it is that his right of recovery against Southwestern Hotel Company, C. N. Hilton, and some of the other defendants is founded upon fraud.

We quote from the petition:

"These assets were thus transferred for the purpose of hindering, delaying and defrauding the noteholders and/or bondholders, and for the purpose and as a means of obtaining such assets for C. N. Hilton and his alter egos free of the legal and equitable liens securing the claims evidenced by the notes herein sued on" * *

"The Southwestern Hotel Company is merely a continuation of the El Paso Hilton Hotel Company and was created, organized and brought into being by C. N. Hilton as a mere tool and business conduit of El Paso Hilton Hotel Company, Hilton Hotel Company and C. N. Hilton, as a means of perpetrating a fraud, as detailed herein, and for the express purpose and as a means of evading the existing obligations evidenced by the notes, among which are those sued on herein by plaintiff, together with the liens securing same, all to the profit of C. N. Hilton, who at all times herein was the president, general manager, director and dominating stockholder of El Paso Hilton Hotel Company, Hilton Hotels, Inc., Hilton Hotel Company and Southwestern Hotel Company, debtors of the noteholders."

In this connection we quote from McKee v. Mathias, supra:

"The El Paso Hilton Hotel Company was in financial difficulty from the time the hotel began operating. The economic condition prevailing throughout the entire period covered by the transactions in question is known to all men. Said company was unable to meet its obligations. The evidence shows that C. N. Hilton strenuously endeavored to meet and protect the company's obligations, and was unable to do so. The Pacific Mutual was threatening to mature the entire debt of $450,000 because of tax delinquency and delinquency in the payment of interest and principal installments due it. The record indicates Mathias is of perhaps advanced age and intrusts his business affairs in large measure to his son-in-law, E. H. Krohn, who, with the approval of Mathias, acted for him. By the delinquencies mentioned and the threatened action of the Pacific Mutual, the situation was fraught with grave danger to Mathias, who owned the land subject to the leasehold. In addition to that danger, McKee and other holders

of the leasehold bonds, before the cancellation of the lease was made by Mathias, caused the El Paso National Bank, trustee, to file suit upon the bonds and sought a receivership.

"The evidence shows conclusively that McKee and the other holders of the leasehold bonds were afforded every opportunity and besought to protect the delinquencies, and failed and refused to do so. The action of Mathias in protecting the delinquencies was compulsory upon him in order to protect his own superior title and lien. The evidence, as we view it, wholly fails to impeach the good faith of Mathias and Krohn in the action taken in canceling the lease and foreclosing the superior lien of Mathias upon the hotel furniture and fixtures.

"It is to be remembered that the lien of the leasehold bonds was subordinate to the title of Mathias and his lien for ground rentals and advancements.

"The second lienholders were either unwilling or unable to protect their lien, and certainly no obligation rested upon Mathias to do so for them.

"Appellant stresses the fact that in a short time Mathias surrendered the property under a new lease to the Southwestern Hotel Company, a corporation organized and controlled by Hilton, together with the hotel furnishings, upon being reimbursed for the advances which he had made and expenses incurred.

"Under the circumstances, this cannot be regarded as sufficiently showing the fraudulent conspiracy asserted by the plaintiff. Mathias was not a hotel man, and, as we have heretofore indicated, his action in canceling the lease and foreclosing his chattel mortgage lien was under compulsion in order to protect his own interests. It was most natural that he should again lease the property at the earliest possible time.

"Without discussing the matter further, our conclusion is that the evidence was insufficient to warrant submission of the tort alleged."

This lengthy quotation from the opinion in McKee v. Mathias, supra, is applicable in the present case. The evidence in this case, as in that case, shows "that C. N. Hilton strenuously endeavored to meet and protect the Company's obligations and was unable to do so." The "holders of the leasehold bonds were afforded every opportunity and besought to protect the delinquencies (taxes, interest due the Insurance Company and ground rentals due Mathias), and failed and refused to do so."

They also failed and refused to co-operate with or aid Hilton and Mathias in the strenuous efforts they made to protect the properties of the El Paso Hilton Hotel Company and its creditors. In fact, they made it more difficult for Hilton and Mathias by the suit and receivership which they caused the El Paso National Bank to institute in the district court of El Paso county.

Our conclusion upon this phase of the case is that no actionable fraud, actual or constructive, is shown by the evidence or the jury findings, and the court properly limited plaintiff's recovery to a personal judgment against the El Paso Hilton Hotel Company, the maker of the leasehold bonds, for the amount due thereon.

The many cases which the appellant cites in this connection present different facts and are not regarded as in point here.

As we view it, the action taken by Hilton in organizing the Southwestern Hotel Company which was intended to acquire and did later acquire the assets of the hopelessly insolvent El Paso Hilton Hotel Company was a bona fide reorganization of said insolvent corporation, which reorganization was free from fraud, actual or constructive. It was a reorganization following a valid foreclosure, and the leasehold interest and personal property acquired by the Southwestern Hotel stand discharged of the lien asserted by plaintiff. 14a C.J. p. 1050, § 3620; Murphy v. Argonaut Oil Co., Tex.Com.App., 23 S.W.2d 339; Armour v. E. Bement's Sons, 6 Cir., 123 F. 56, 59; Coriell v. Morris White, Inc., 2 Cir., 54 F.2d 255; Berry v. Old South Engraving Co., 283 Mass. 441, 186 N.E. 601; Ewing v. Composite Brake Shoe Co., 169 Mass. 72, 47 N.E. 241; National Foundry & Pipe Works v. Oconto City Water Supply Co., 105 Wis. 48, 81 N.W. 125; Swing v. Empire Lumber Co., 105 Minn. 356, 117 N.W. 467; Knott v. Fisher Vehicle Co., Mo.App., 190 S.W. 378; Midland R. Co. v. Fisher, 125 Ind. 19, 24 N.E. 756, 8 L.R.A. 604, 21 Am.St.Rep. 189.

In this connection we quote from Armour v. E. Bement's Sons, supra, as follows: "It is of common occurrence that an insolvent corporation is compelled to go into liquidation. The individuals who compose it seek to save what they can from the wreck by organizing themselves

in a new corporation, and buying such of the properties of the former corporation as they can profitably use in the new. No principle of law is violated by their forming the new organization; and no right of the creditors of the old organization is injured, provided its assets are lawfully acquired by the new one. If they are not lawfully acquired, the creditors have the same right to pursue the assets as they would have if any other person had unlawfully acquired them; and it is difficult to find any basis for any other equity which they could claim as inuring to them from the transaction. The stockholders of an insolvent corporation are not bound to maintain the corporation in a hopeless struggle. The claims of creditors do not impose such an obligation, and public policy requires that they should be free to engage in new enterprises. They may do this, but they cannot gain profit from the assets of the corporation, to the detriment of the lawful rights of creditors, any more than any other person may. To be sure, the relation of the stockholders, and especially of the directors, to the subject-matter, may afford reason for close scrutiny of such transactions; but in the end the question is one of fair dealing in the exercise of a legal right. I Morawetz on Corp. § 811. All this is inconsistent with the idea that a new corporation, organized with the intention of acquiring for it the assets of an existing one, must, upon acquiring them, be regarded as the old corporation in a new dress, and so liable for the old debts. The fact that the directors are the same persons as the directors of the old has no tendency to prove the identity of the corporations, where, as here, each is conceded to be separately organized at widely different dates, with different stockholders and with different stock, under laws which, when complied with, create a distinct legal body, having rights and duties conferred and imposed upon it by its separate charter."

There is no merit in those assignments which assert the lease of Mathias violates the rule against perpetuities. If there is a violation of such rule, it would not aid the appellant.

The appointment of a receiver in the suit brought by the El Paso National Bank was not void because such appointment was made in vacation. Lyons-Thomas Hardware Co. v. Perry Stove Co., 88 Tex. 468, 27 S.W. 100.

All other points submitted by appellant have been considered. They are regarded as without merit and are overruled.

Affirmed.